GEORGE N. BRADLEY *vs.* GIDEON P. REYNOLDS.

New Haven & Fairfield Cos., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

Property attached in a suit of *A* against *B* was replevied out of the officer's hands by *C*. *D*, as surety for *C*, gave a joint and several replevin bond with him for the return of the property if he failed in his suit. *C* failed in his suit and the officer got judgment for the return of the property. *A* afterward obtained a judgment against *B*, in the suit in which the property had been attached, for a sum much greater than the value of the property. In a suit by the officer against *D* on the replevin bond, it was held not necessary that demand for payment of *A's* judgment should have been made on *B*, or search made for property on which to levy the execution.

In the suit the defendant alleged in his defense that judgment was obtained in the replevin suit by the present plaintiff (defendant in that suit) by collusion between the present plaintiff and *C*, (plaintiff in that suit) solely for the purpose of compelling *D* (defendant in the present suit)

to pay a large sum of money on the replevin bond, and was a fraud
on *C.* Held to be demurrable as merely alleging fraud, and not stating
the particular acts that constituted the fraud.

Acts which are claimed to constitute fraud should be so stated that the
court can see that they do so.

And held that it would be necessary to a fraud upon the defendant in tak-
ing the judgment by agreement with *C,* that the present plaintiff should
have believed that *C* was the owner of the replevied property. If he
supposed that he was not the owner, then he was entitled to the judg-
ment and had a right to take any legal steps for securing it.

The non-return of the property upon a replevin bond within a reasonable
time after demand made, constitutes a breach of the bond.

Where the property was tendered after a breach of the bond, and after a
suit had been brought upon it, it was held that the plaintiff was not
bound to accept it.

The property had greatly depreciated before the damages were assessed in
the suit on the replevin bond, but this depreciation was found to be due
to the wrongful acts of the party who obtained possession of it by the
replevin.   Held that in a suit on the replevin bond the defendant
could not be allowed to show a depreciation thus caused.

The damages were assessed upon the basis of its value at the time it was
replevied. Held to be correct upon the special facts of the case.

·The fact that *A* had filed a judgment lien for the amount of his judgment
against *B,* on real estate of the latter, more than sufficient to pay the
judgment, and had brought a suit to foreclose the lien, could not affect
the liability of *C* on the replevin bond.

[Argued October 28th, 1891—decided January 5th, 1892.]

ACTION on a replevin bond; brought to the Superior Court
in New Haven County.   A demurrer to the defendants'
answer having been sustained, as also a demurrer to his sup-
plemental answer, the defendant suffered a default and the
case was heard in damages before *Prentice, J.*   Facts found
and damages assessed at $778.52, and appeal by the de-
fendant.

The case is fully stated in the opinion.

*L. Harrison,* for the appellant.

1. The demurrer to the first defense should not have been
sustained.   If the execution upon Swift's judgment had
been satisfied by paying the amount to the officer, there
would have been no right of action against this defend-
ant.   There would have been no right to claim the goods
replevied at the time of the attachment, if there had been no

judgment obtained in the original suit, nor if the judgment had been paid when it was rendered. If there was no right to demand the goods replevied, or to levy an execution upon them, then there was no right to make demand of the defendant in this suit for the goods replevied, and necessarily there was no right to ask for a judgment in this suit. The plaintiff having alleged that the sheriff made search for the goods on which to levy the execution and could not find them, the defendant had a right to deny it, and show that there was ample property of the judgment debtors upon which he could have levied, if he had made search; that such property was within his precincts; and that it was due entirely to his negligence that he did not levy on it. Having raised that issue of fact, it could not be disposed of by a demurrer, and therefore it was an error to sustain the demurrer.

2. In the second defense, to which a demurrer was filed, which was sustained, it appears that the defendant offered to prove that Bradley, the nominal plaintiff, and Swift, the real plaintiff in this case, entered into a collusive arrangement with John and Jane Murray, the plaintiffs in the replevin suit, by which, without any notice to this defendant, a judgment was obtained against the plaintiffs in that suit, for the sole purpose of compelling the defendant, who had become surety for the Murrays, to pay a large sum of money to Swift. The demurrer admits the following facts: Swift claims a sum of money from William and Jessie Reynolds. He attaches the personal property of others. Through the intervention of William Reynolds, one of the defendants, who becomes principal in the replevin bond, the Murrays become the plaintiffs in a replevin suit, and the property attached is taken out of the state, as appears by the finding. The actual title to the property is in the Murrays, and so continues until the 15th day of October, 1890, at which time, without any notice to this defendant, the Murrays and Swift and Bradley agree to a judgment which is a fraud upon the defendant, and is obtained solely to compel him to pay some money to Swift. It has been held, frequently and

properly, that the surety upon a replevin bond and the defendant in a suit upon the bond can show that the title to the replevied property was in the plaintiffs in the replevin suit, as a defense to an action on the bond. That is very different from this case, however. Here it is proposed to show not only that the actual title was in the plaintiffs in the replevin suit, but that the judgment in that suit was obtained by a collusive agreement, fraudulently, for the purpose of compelling this defendant to pay money which it is inequitable to ask him to pay. No other remedy is open to the defendant. He was not a party to the replevin suit. The first opportunity he has of showing the collusive arrangement and fraud is when a suit is based upon that judgment. It is well settled that in an action of judgment debt the defendant may show that the judgment was obtained by fraud. This being so, why cannot the defendant, being surety on the replevin bond, set up the fraud in the original judgment as a defense? What difference in principle is there between the two cases? Freeman on Judgments, §§ 335, 336; *Michaels* v. *Post*, 21 Wall., 398; *Willey* v. *Paulk*, 6 Conn., 74.

3. The filing of the judgment lien on the 7th of May, 1890, together with the foreclosure proceedings upon it, constituted a good defense. A judgment lien has been held in this state, under our statute, to be a statutory mortgage. It confers upon the judgment creditor an indefeasible title, which can only be taken away by his own consent, or removed by a payment of the judgment debt. Having elected to satisfy his judgment, if possible, by filing a judgment lien, he is in the same position as if he had levied upon personal property to an amount which, when sold, satisfied the judgment. In that event he could not have demanded the property levied upon nor have maintained suit on the bond. If he had levied upon real estate, and had it set off upon appraisal, and the appraisal had been sufficient to satisfy the execution, then he could not have demanded the replevied goods or brought suit on the bond. Having taken advantage of the statute which permits a judgment lien to be filed,

he cannot be permitted to collect his judgment twice. *Beardsley* v. *Beecher*, 47 Conn., 408; *Loomis* v. *Knox*, 60 id., 343.

4. The questions raised by the supplemental answer and the demurrer thereto, relate to the offer to return the replevied property, and the tender of $25 to cover damages for the property not returned. The defendant claimed that he had a right to tender the property, and that, under the circumstances shown in the finding of facts, it was not an unreasonable time after the demand was made in October, 1890. Unless this court shall hold that the time after the demand and before the tender was unreasonably long, then it was the duty of the plaintiff to accept the tendered property, and the judgment for damages should have been for a nominal sum. There are sundry authorities which sustain this doctrine. A return of a part of the property is a defense *pro tanto* to a suit for damages for non-return, and even after a suit is brought on the bond, a return or a tender of the property should be considered in mitigation of damages, and evidence of such a return or tender is admissible. The court below, by sustaining the demurrer, cut off the defendant from even offering the evidence in mitigation of damages. That such return or tender is a defense, at least *pro tanto*, is settled by the following cases: *Harts* v. *Wendell*, 26 Ill. App., 274; *Melvin* v. *Winslow*, 10 Maine, 397; *June* v. *Payne*, 107 Ind., 307; *Sands* v. *Fritz*, 84 Penn. St., 15.

5. The plaintiff was not entitled to judgment for more than nominal damages, or for more than the value of the property at the time of the breach of the condition of the bond. The breach was not earlier than May, 1890, and strictly speaking, not until October, 1890, when the demand was made for the return of the goods. Prior to the first date there was no right in Swift to call for the goods for any purpose. He made no attempt to obtain them until the 22d of October. The value of such property would change greatly between August, 1889, and May or October, 1890. This brings us to a consideration of what is the correct rule for the assessment of damages in such a case as this. There

are two questions to be considered.—(1) When was the breach of the condition of the bond?—(2) If damages for detention were assessed at the time of judgment rendered in the replevin suit, then any damage to the plaintiff in this suit on account of the detention or depreciation of the property was merged in the judgment. In considering the question of the time of the breach, or the time when the possession became unlawful in the plaintiff in the replevin suit, it must not be forgotten that there is a clear distinction between goods taken out of the hands of a sheriff who holds them by attachment, and goods replevied upon the claim that they are unlawfully detained. In the first case, the sheriff has no right to their possession for any practical purpose until he has an execution in his hands under which he can levy upon the property. In the second case, if the plaintiff in the replevin suit is defeated, then the detention has been unlawful from the time of the replevin. The rule is the same in an action for damages of this character, whether it grows out of contract, or out of tort where no element of malice comes into consideration. *Talcott* v. *Crippen*, 52 Mich., 633. The rule is the same in replevin as in trover. The time of fixing the value is that when the possession becomes wrongful, and the liability of a surety cannot be fixed earlier than the time of the breach of the condition of the bond. *Otter* v. *Williams*, 21 Ill., 118 ; *Ripley* v. *Davis*, 15 Mich., 75 ; *Robinson* v. *Barrows*, 48 Maine, 186 ; *Bonesteel* v. *Orvis*, 22 Wis., 522 ; *Chapman* v. *Kerr*, 80 Mo., 158. Some authorities hold that sureties on a bond can only be made liable for the value of the property at the date of the trial of the suit against them. *Schneider Brewery Co.* v. *Niederweiser*, 28 Mo. App., 233 ; *Miles* v. *Davis*, 36 Tex., 690. Upon the second question, we claim that where damages for detention from the time of replevin down to the time of judgment in the replevin suit are assessed at that time, all questions of damages to that date are covered, and they cannot be re-assessed or found over in an independent suit or in a suit on the bond. *Hohenthal* v. *Watson*, 28 Mo., 360 ; *White* v. *Van Houten*, 51 id., 577. The sureties

on a bond ought not to be held liable for damages for detention, or any other cause, which accrued prior to a demand for a return, unless they are included in the judgment rendered against their principal. *Sopris* v. *Lilley*, 2 Col., 496. From the foregoing authorities we claim that the court below erred in assessing the damages upon the value of the property in August, 1889, and therefore erred in admitting evidence of its value at that time ; that it erred in assessing damages upon the value of the property at any time before the breach of the condition of the bond, and that that breach could not, in any event, have been prior to May, 1890, and, strictly speaking, there was no breach before October 22d, 1890. Whatever the exact rule may be, that followed by the court below is in violation of the principles we have claimed. The only case cited against us, and which upon a first examination may seem to sustain the position taken by the court below, is *Washington Ice Co.* v. *Webster*, 125 U. S. R., 426. There is a clear distinction, however, between that case and this, and the distinction requires a different rule. But if we adopt the principle of that case it would make the damages assessable as of the date when the possession became wrongful as against Swift by his becoming entitled to the property for sale upon execution. That time did not accrue until after he had obtained judgment upon his original suit in May, 1890.

*T. H. Russell*, for the appellee.

TORRANCE, J. This is an action against the defendant as surety upon a replevin bond. The complaint is in the ordinary form setting out in substance the following facts.

On the first day of August, 1889, the plaintiff, as deputy sheriff, attached, as the property of William M. and Jesse Reynolds, the property described in the complaint, in a suit brought by one Swift against them. On the next day, John J. and Jane A. Murray, claiming to be the owners of the attached property, brought an action of replevin against the

plaintiff, and caused the attached property to be delivered to them. The bond sued upon was given in that suit.

On the 7th of May, 1890, Swift recovered judgment in his suit for a sum much greater than the value of the attached property. On the 15th of October, 1890, judgment was rendered in the replevin suit in favor of the present plaintiff, as defendant therein, for the return of the property replevied, one dollar damages, and costs. On the 22d of October, 1890, execution was taken out on the Swift judgment, demand on the execution was in effect made, but it was not paid, and no property of the judgment debtors could be found, although search was duly made therefor. Afterwards demand was made with the execution upon the defendant for the property replevied, but he refused and neglected to turn out the same, and the execution was returned unsatisfied. None of the replevied property has ever been returned to any one in satisfaction of the Swift judgment.

To this complaint the defendant, by way of answer, filed four special defenses. The first defense simply denied that search had been made upon the Swift execution for property of the judgment debtors, and that none could be found on which to levy, as alleged in the complaint, and substantially admitted all the other allegations. To this defense the plaintiff demurred, on the ground that the allegation in question was mere surplusage. The court sustained the demurrer, and this action of the court is assigned for error.

"Surplusage is that which is impertinent or entirely superfluous, as not being necessary either to the substance or the form of the pleading." Gould's Pleading, chap. 3, § 11. The allegation in question was "impertinent and entirely superfluous," inasmuch as if it had been stricken out a good cause of action would have remained. *Persse* v. *Watrous,* 30 Conn., 148. It was not, as claimed by the defendant, an "immaterial averment," in the technical sense, that is, "a statement of unnecessary particulars, in connection with and as descriptive of what is material." Gould's Pleading, chap. 3, § 185. It was mere surplusage, and this in general

does not vitiate. The court did not err in sustaining the demurrer to the first defense.

The material part of the second defense reads as follows: —" If the said nominal plaintiff, as a defendant in the replevin suit of John J. Murray and Jane A. Murray against himself, as deputy sheriff, recovered judgment as alleged, on the 15th day of October, 1890, said judgment was obtained by collusion between the said nominal plaintiff, Bradley, and the real plaintiff, Swift, on the one hand, and the said John J. and Jane A. Murray, plaintiffs in the replevin suit, and without notice to the defendant in this suit, and for the purpose of obtaining a judgment against the defendant in this suit. The actual title to the replevied property on the 2d day of August, 1889, and from that time until on and after the 15th day of October, 1890, was in the said John J. Murray and Jane A. Murray; and the judgment so obtained by agreement and collusion between the said nominal and real plaintiffs in this suit and the plaintiffs in the replevin suit was a fraud upon the defendant in this suit; and said judgment was obtained solely for the purpose of compelling the defendant in this suit to pay a large sum of money to the said Swift." The plaintiff demurred to this defense and the court sustained the demurrer, and this is assigned for error.

The question is, whether the facts alleged and admitted by the demurrer show that the judgment in the replevin suit was obtained by fraud on the part of Swift, or Bradley, or both. It is not enough that the conduct of the Murrays in suffering judgment in the replevin suit was a fraud upon the defendant, unless it also appears that the plaintiff or Swift or both participated in some way in that fraud. Nor is it enough merely to allege that the judgment in question was obtained by fraud and collusion on the part of the plaintiff and Swift with the Murrays. The facts stated and set forth must be such as to constitute in law fraud and collusion on the part of the plaintiff and Swift. *Gates* v. *Steele*, 58 Conn., 316.

Now if all the facts and circumstances alleged in the

second defense are as alleged, still it does not follow that the plaintiff or Swift or both committed any fraud upon the defendant, *unless they knew at the time that the replevied property belonged to the Murrays.* If the defense in question had alleged that the plaintiff and Swift, with knowledge that the property really belonged to the Murrays, had by collusion with them obtained this judgment, the case would have been quite different. But no such allegation is anywhere made. If they did not know this fact at that time, then all that it is charged that they did they had a perfect right to do. Swift and the plaintiff had attached the property as the property of William M. and Jesse Reynolds. The replevin suit, so far as we know from the conduct of the parties, was defended in the belief that the property did not belong to the Murrays. Under such circumstances the plaintiff and Swift had a right, so long as they were acting in good faith, to take a judgment against the Murrays by nonsuit or otherwise, in a suit to which they believed the Murrays had no good defense; and they had a right to do this as a part of a process which would end in subjecting the defendant to liability on his bond, and that too without notice to him. Without this element of knowledge on the part of Swift and Bradley, we are unable to see how, in doing what it is charged they did, they were guilty of any fraud or collusion of any kind towards any person.

If the plaintiff and Swift were guilty of no fraud in obtaining the. judgment, then the mere fact, if it be a fact, that the Murrays were guilty of fraud or other wrongful conduct against the defendant in failing to prosecute the suit, would be of no avail in this suit against innocent parties. *Martin* v. *Campbell*, 120 Mass., 126; *State ex rel. Cartwright* v. *Holmes*, 69 Ind., 577.

So far as the defense now in question is concerned, the Murrays, as to the plaintiff and Swift, appear to be mere third parties and strangers, whose frauds against the defendant of the kind in question, if they committed any, would not affect innocent parties. Bigelow's Law of Fraud, 252,

Bradley v. Reynolds.

§ 12. The demurrer to the second defense was properly sustained.

The third defense alleges in substance that after Swift recovered judgment in May, 1890, he filed a judgment lien upon land of the judgment debtors, of value more than sufficient to satisfy the judgment, and that in November, 1890, he brought suit to foreclose the lien, which suit is still pending. To this defense the plaintiff demurred and the demurrer was sustained, and this is assigned for error.

The claim of the defendant on this point, as set forth in his brief, seems to be that the filing of a judgment lien, when the lien secures more than enough land to satisfy the judgment, and a suit is pending to foreclose it, is equivalent to the actual satisfaction of the judgment. The mere statement of the claim shows its unsoundness.

There is no claim that the judgment was actually satisfied or paid. The facts show that Swift was in court in the foreclosure suit, seeking satisfaction, not that he had already obtained it. Until he obtained satisfaction he had the right to use all the means and methods to obtain it which the law gave him. The judgment debtors could not be heard to complain of this, and the defendant is not in any better plight as to this matter. The demurrer was properly sustained.

These same matters were set up in the fourth defense "as a matter of equitable defense, and as a reason why no judgment should be rendered against the defendant in this case at this time." This was also demurred to, and for the reasons already given in disposing of the third defense, we think the court below did not err in sustaining the demurrer.

After filing these four defenses the defendant filed a supplemental answer, which set up in substance that at all times since the date of the judgment in the replevin suit the defendant had made diligent efforts to obtain possession of the replevied property, but until the 21st day of April, 1891, had been unable to find it; that on that day he obtained possession thereof, (except some of the lap robes,) and tendered the same to the plaintiff, who refused to re-

ceive it, and the same is now subject to the order of the
plaintiff or of Swift; that said property had not deteriorated
but had increased in value since the date of the judgment
in the replevin suit; and that at the same time, "to cover
all damages to which the plaintiff would be entitled on ac-
count of the delay in returning the goods to him, the plaint-
iff, or on account of any deficiency, if any, in the number of
lap robes, for which the bond was given," the defendant
" made a tender to the plaintiff in this suit of the sum of
twenty-five dollars," which the plaintiff refused to accept.
The supplemental answer ended as follows:—" Wherefore
the defendant says that no judgment should be passed in
this case against him, except either for costs or for nominal
damages and costs."

This supplemental answer was also demurred to, the de-
murrer was sustained, and this is assigned for error.

The bond given in this suit does not appear upon the
record, but we assume that it was in the ordinary form pre-
scribed by statute. One of the obligations of such a bond is
that the plaintiff in the replevin suit shall return the replev-
ied property to the defendant therein, if the plaintiff fails to
establish his right to the possession of the same in that
suit. No time is mentioned in such bonds within which,
after judgment, the property must be returned to the de-
fendant, but there can be no doubt that if, as was true in
the case at bar, the property is not returned within a reason-
able time after demand therefor, this constitutes a breach of
the obligation to return.

The supplemental answer, without alleging any facts
amounting to a legal excuse for the failure to return the
property at the proper time, sets up a tender of part of the
property long after the breach of the obligation, and after
suit brought thereon. This is not a plea in bar of the action
in whole or in part, nor is it filed as such, nor does it neces-
sarily follow, if the facts set up be admitted, that the judg-
ment must be rendered as claimed in the answer.

There is no allegation in the plea that the sum tendered
" to cover all damages to which the plaintiff would be en-

titled on account of the delay in returning the goods to him, the plaintiff, or on account of any deficiency, if any, in the number of lap robes for which the bond was given," was in fact sufficient for that purpose, and consequently the fact of such sufficiency is not admitted by the demurrer. It does not then at all follow that an admission of the facts set up is an admission that judgment must be only for costs, or for costs and nominal damages, as claimed.

But aside from this, upon the facts set up in the defense in question we think the plaintiff was not bound to accept the property tendered at so late a day. It was optional with him to do so, for the provision for a return was made for his benefit, but he was not obliged to do so. It was the right and duty of the defendant to return the property at a proper time. After he has refused, and the breach of his obligation is complete, and the plaintiff has made his election to sue for damages for the breach, the defendant cannot, under such a state of facts as is here set up, compel the plaintiff to take the property instead of damages for it.

But the plaintiff says that the facts set up in the supplemental answer should be considered in mitigation of damages, and that "the court below, by sustaining the demurrer to the supplemental answer, cut off the defendant from even offering the evidence in mitigation of damages."

Now even if it were true that the facts set up in the supplemental answer were of such a nature that they might have been shown in mitigation of damages, a point which it is not necessary here to decide, this claim is without foundation. Facts and circumstances in mere mitigation of damages are seldom, if ever, pleaded, and from the record we know that after all the demurrers were overruled there was a hearing in damages, wherein we must assume, for he makes no complaint to the contrary, that the defendant had opportunity, if he had seen fit to use it, to offer legal evidence in mitigation of damages. In sustaining the demurrer to the supplemental answer therefore, the court below committed no error.

After these demurrers were overruled, the case was de-

faulted for want of an answer, and there was a hearing in damages. Upon that hearing the defendant offered no evidence "showing or tending to show that any of the allegations of the complaint were untrue." The court finds as follows:—"The property described in the complaint remained in Guilford till October, 1889, when it was removed from the state, and its whereabouts thereafter remained unknown until April 22d, 1891, when the horses, carriages, and five of the robes, were returned to Guilford. The harness and remaining robes have never reappeared. * * * No witness was offered by either party who had any knowledge of the property during this interval, between said removal and said return, or of the harnesses and remaining robes since said October, 1889. During the time from the replevy, August 2d, 1889, to October, 1889, the condition and value of said property remained unchanged. In April, 1891, when the horses, carriage and five robes were returned, the horses were in bad condition from neglect and want of care, and much, although not permanently, depreciated in value, and the carriage, which was nearly new when replevied, was considerably worn and its value much reduced. The depreciation was wholly due to the neglect and improper care to which the horses had been subjected, and the use to which the carriage had been put, excepting that the value of the horses would have become slightly reduced by their increase in age."

The court, in assessing the damages, found the value of the property at the time it was replevied, and to this added the damages and costs in the replevin suit, and interest from the date of that judgment to the date of the judgment in the present suit. The defendant claimed, and asked the court to hold, that the damages should be assessed on the basis of the value of the replevied property at the time of the judgment in the replevin suit in October, 1890, and not upon its value at the time it was replevied; or else upon the value of such property at the time of the trial in the present suit, with damages for detention since the judgment in the replevin suit added. The court, as we have seen,

overruled these claims, and assessed damages upon the basis of the value of the property at the time it was replevied.

The remaining errors assigned are all based upon this ruling of the court. If that ruling was correct, or, if incorrect, it did the defendant no harm, then the points covered by those assignments are not well taken.

Even if the ruling was incorrect we think it did the defendant no harm. The court below found, as we have seen, that the depreciation in the value of the property between the time it was replevied and April, 1891, when it was tendered in return, was wholly due to the neglect and improper use and care to which it had been put and subjected, except as to a slight reduction of value in the horses by their increase in age. In substance and effect this is a finding that the value of the property, so far as the defendant is concerned, was the same in April, 1891, as it was in August, 1889; for its depreciation in value at the latter date is found to be wholly due to the wrongful conduct of those who obtained the possession of it by means of the writ of replevin. But depreciation arising from such a cause cannot avail the Murrays or their bondsmen. As to them, the property in April, 1891, must be held in effect not to have depreciated at all, for in law they could not show such depreciation so as to affect the damages. The court found in effect that if the property had remained in the custody of the officer, its value would have been substantially the same in April, 1891, as it was in August, 1889. If this be so, the court of course, in effect, found also that the property was of the same value in October, 1890, as it was in August, 1889.

If then the court based its estimate of damages upon the value of the property in August, 1889, rather than in October, 1890, or in April, 1891, what difference does it make to the defendant, or how does it legally harm him, if the finding at either of the other dates must have been substantially the same? In this view of the case, even if we assume that the court erred, the error cannot have injuriously affected the defendant, so as to entitle him to have the judgment reversed or a new trial granted.

But aside from this, we think the ruling was correct under the circumstances of this case. Swift had recovered a judgment for more than treble the value of the attached property. That property in August, 1889, was in the custody of an officer, whose duty it was to hold and keep it, without depreciation in value from any fault of his, to satisfy the judgment which Swift obtained. If the property was of a perishable nature, or the custody of it was difficult or expensive, it might have been converted into money, which would have been held to respond to the judgment. In these circumstances and by means of the bond given by the defendant, that property was placed in the custody and possession of parties who had no claim or right of any kind whatever to it.

The defendant in effect bound himself at least to return the property without depreciation in value arising solely from the use or abuse or wrongful conduct of the Murrays or others under them, and to pay all damages the plaintiff might sustain " by the replevying thereof," if, as happened, the Murrays failed to establish in the replevin suit their right to the possession of the property. If the defendant at the proper time had returned the property depreciated in value from such use or wrongful conduct, there can be no doubt that the plaintiff could recover damages for such depreciation in this action. 2 Sutherland on Damages, 47.

The obligation is in effect one of indemnity. The plaintiff is to be placed, so far as money recovered as damages can do so, in the position he would have occupied if the property had not been replevied. If the defendant had returned the property at the proper time, undepreciated in value from the causes aforesaid, the plaintiff would have had the benefit of the full value of the property as it was when taken from him. To this benefit he was clearly entitled under the circumstances, by the defendant's voluntary obligation. " The general rule of law would give in such a case, as an indemnity, the value of the property at the time it was taken." 2 Sutherland on Damages, 47.

It makes no difference that the plaintiff was merely an

attaching officer. As against the Murrays, whose possession, though obtained under the forms of the law, must now be held to have been in fact wrongful from the beginning, and against their bondsman, the plaintiff was entitled to recover full damages. *White* v. *Webb*, 15 Conn., 301. 2 Sutherland on Damages, 55. The court below, upon the point in question, ruled correctly.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.