WILLIAM R. SHELTON *vs.* JOHN E. HEALY.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action for fraudulent representations, the plaintiff is not required to allege the representations in precisely the language in which they were uttered, nor to prove them precisely as alleged. It is enough to allege and prove the substance and material parts of the representations.

To enable the trier to understand the meaning of statements made by the defendant, and relied upon as proving in substance the representations alleged, the plaintiff may often be permitted to prove the entire conversation in which the statements occurred, although representations materially different from those alleged are thereby shown.

Statements by the defendant that the output of a corporation, stock in which was the subject of the sale, was six million bricks a year, that all the bricks to be made in the following summer had already been sold, that a good income would come from the stock, that it had been fully paid for in cash, that the defendant would not sell his stock for $150, that there was no stock upon the market, and

that the plaintiff would have to pay no assessment upon it, are admissible in support of allegations that the defendant represented the business was very prosperous, that large dividends were earned and would be paid, and that the stock was worth par.

Such representations as to the value of the stock, when made by the president and manager of the corporation from its organization, are to be regarded as statements of fact and not mere expressions of opinion.

To show the falsity of the representations, evidence is admissible from another stockholder and director to show how the corporation was organized two years before, and that its stock was paid for only in property, which was grossly overvalued.

A written statement of the corporation's condition upon April 1st, signed by defendant and filed for record on July 2d, is admissible to show the falsity of the representations made on May 20th of the same year.

Argued November 1st—decided December 20th, 1901.

ACTION to recover damages for fraud, brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $4,315, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The substituted complaint alleged, in part, that the defendant on May 27th, 1897, was the owner of 640 shares of the stock of the Charter Oak Brick Company, and that ever since its organization he had been a director, and the president and manager of the company, and had full knowledge of its condition and business; that the business of said company prior to said day had been and then was unprofitable, and said company was then largely indebted and was in embarrassed circumstances, all which was known to the defendant, and that on the 18th of October, 1897, it made an assignment in insolvency; that on said 27th of May, 1897, to induce the plaintiff to exchange certain premises owned by him in New Haven, of the value of $15,000 and subject to a mortgage of $8,000, for 240 shares of the stock of said company and $1,000 in money, the defendant " falsely and fraudulently represented to the plaintiff that said company was doing a very prosperous business, and that its business then and for a long time prior thereto had yielded net profits of $100 per

day, that its stock was worth par, and that large dividends were earned and would be paid on the same ; and as a further inducement to the plaintiff to make said exchange, the defendant then and there undertook that said company should employ the plaintiff as its secretary, at a salary of $1,200 a year, and promised him that such employment should be permanent;" that the plaintiff was thereby induced to make said exchange and become a stockholder in said company, and was made its secretary; that said shares were then, and have ever since been, worthless ; that said company was not then doing, and never had done, a prosperous business, and did not then earn and never had earned profits of $100 per day or any profits, and had never earned profits from which dividends could be declared, but was then insolvent, as defendant well knew.

The court found that said company was organized in July, 1895, with a capital stock of $25,000, divided into 1,000 shares of $25 each, which were all subscribed for by the defendant, and Peter McQuaid and Daniel Colwell; that said stockholders were elected directors, and the defendant elected president, Colwell secretary, and McQuaid manager; that on said day a certificate of organization, sworn to by said directors, was filed with the town clerk of New Haven, showing that $10,000 of the capital stock had been paid in in cash, and $11,000 in property ; that on said date no cash had been paid in, and no property transferred to said company ; that on August 1st, 1895, each of said stockholders transferred to the company certain property, which was credited to them upon the books of the company at a sum much greater than its real value, on account of the stock issued to them ; that in January, 1896, the stock of said company was increased to $35,000, of which increase $3,500 was issued to the defendant and the same amount to said Colwell, neither paying anything therefor, and that afterwards 180 shares of stock surrendered by McQuaid were issued, 120 shares to the defendant and 60 to Colwell, for which they paid nothing ; that all the stock issued to defendant, and to Colwell and McQuaid, was entered upon the books of the company as

fully paid and nonassessable; that up to January 1st, 1897, when defendant was elected manager of the company, he knew generally of the financial condition of the company and its business, and thereafter was thoroughly familiar with the same.

The court further found that on the 20th of May, 1897, the defendant induced the plaintiff, who was 20 years of age, to exchange a house and lot of the value of from $13,000 to $14,000, subject to a mortgage of $8,000, for $1,000 in cash and 240 shares of said stock at the par value of $6,000; that to induce the plaintiff to make said exchange the defendant fraudulently represented that said company was doing a prosperous business, that its output was six million brick a year, that then and for a long time it had yielded a net profit of $100 per day, that all the brick for the summer of 1897 were sold, and that its stock was fully paid in cash; that the defendant did not know what it would bring, but would not sell his stock for $150; that a good income would come from the stock, and that the defendant promised the plaintiff that he should be employed as secretary of the company permanently at a salary of $1,200 a year.

It is found that the company did very little business in 1897, and was unable to sell its product in that year; that at the time said transfer of stock was made to the plaintiff, the company was in failing circumstances and its shares of stock of little or no value; that the defendant had paid in but $3,375 for the 240 shares transferred to the plaintiff, and that said company had never paid a dividend; that the plaintiff was elected secretary of the company at a salary of $1,000 per year, and continued to so act until the company made an assignment in insolvency in October, 1897; and that the defendant knew said representations to be false, and made them with the fraudulent intent to induce the plaintiff to buy said stock.

Upon the trial the court permitted the plaintiff, against the defendant's objection, to show by the testimony of said McQuaid that the stock of the company was subscribed for, issued, and paid for in the manner above set forth, and to lay in evidence the assignment in insolvency dated October 27th,

1897, and signed by the defendant and said Healy and the plaintiff, and the inventory and appraisal which was a part of said proceedings, the latter merely to prove what the assets were at the time of insolvency. In answer to an inquiry by the court, defendant's counsel stated that he supposed that the things therein named were assets of the estate.

Against the objections of the defendant that the matters were not covered by the allegations of the complaint, the plaintiff was permitted to testify that during the negotiations for the exchange, the defendant represented to him that all of the $35,000 of stock was subscribed for, excepting $3,000; that none of the stock was upon the market; that he would not sell his stock for one hundred and a half; that the yard did a good business; that its output was six million brick a year; that the plaintiff would not have to pay any assessment on the stock, and that it was all paid for.

The court admitted in evidence a document called *Exhibit C*, which was signed by the defendant and is stated in the record to have been " duly filed July 2d, 1897," and to show " the condition of the company April 1st, 1897," as tending to prove the alleged fraudulent representations. It was objected to by the defendant upon the grounds, among others, that it was nothing that the plaintiff had acted upon or been influenced by, and that it did not contradict the statements claimed by plaintiff to have been made to him by defendant.

The defendant having testified upon direct examination that he did not know of entries on the books crediting subscribers to stock with amounts not paid, and with property at fictitious values, that he did not suspect that the company was insolvent when he had the transaction with the plaintiff, and that in June, 1897, he had no suspicion of the insolvency of the company,—plaintiff's counsel was permitted, on cross-examination and against the defendant's objection, to ask him whether the debts and obligations of the company were the same on June 30th as on May 1st; whether he knew that Colwell turned in property on account of his stock subscriptions; and whether the defendant had not presented a claim

to the commissioners in insolvency for salary at $2,000 a year from July 1st, 1895, to June 1st, 1897.

Upon these facts the defendant claimed that he was not liable upon any of the grounds or representations set up in the complaint.

*Charles S. Hamilton*, for the appellant (defendant).

*Theodore M. Maltbie* and *Joseph P. Tuttle*, with whom was *Walter Pond*, for the appellee (plaintiff).

HALL, J. The principal complaint of the defendant in this appeal is that upon the trial in the Superior Court the plaintiff was permitted to offer evidence of fraudulent representations, made to induce the exchange in question, which were not alleged in the pleadings, and that such representations were found proven and were made the basis of the judgment rendered.

The representations, as alleged in the complaint, are in substance that the business of the Charter Oak Brick Company was very prosperous, yielding a profit of $100 per day, and paying large dividends, and that the stock of the company was worth par.

The representations proven were, in effect, that the business of the company was prosperous, the output six million brick a year, the profits $100 a day, and all the brick of the summer of 1897 sold; that its stock was fully paid in in cash; that defendant did not know what the stock was worth, but would not sell his for $150, and that a good income would come from it.

Although the plaintiff was precluded from proving, as a ground of recovery, any representation differing substantially from those alleged, he was neither required to allege the representations upon which he relied, in precisely the language in which they were made, nor to prove them precisely as alleged. It is enough to allege and prove the substance and material parts of the representations sufficient to sustain such an action. Representations differing from but tending to

prove those alleged, may be shown, and to enable the court or jury to understand the meaning of the statements made by the defendant, and relied upon as proving the alleged representations, the plaintiff may often properly be permitted to prove the entire conversation in which statements occur, even though representations materially different from those alleged are thereby shown. *Pedrick* v. *Porter*, 5 Allen, 324, 326; *Hick* v. *Thomas*, 90 Cal. 289, 295.

Two of the representations alleged in the complaint, namely, that the business of the company was prosperous, and that it yielded a profit of $100 a day, appear by the finding to have been made in practically the words in which they are alleged. Proof of the other representations in the finding: that the output of the business was six million brick a year; that all the brick of the summer of 1897 had been sold; that a good income would come from the stock; that it had been fully paid for in cash; and that defendant would not sell his for $150; with proof that the defendant knew at the time that the company was practically doing no business and was in failing circumstances, and its stock of little or no value, —was admissible to prove, and we think was sufficient to prove, the fraudulent representations alleged in the complaint, that the business was very prosperous, and earning a profit of $100 a day; that large dividends would be earned and would be paid, and that the stock of the company was worth par.

The representation of the defendant as to the value of the stock is not, in this case, as claimed by the defendant, to be regarded as a mere expression of opinion, but as a statement of fact which may be the ground for an action of deceit. As a stockholder and director of the company from the time of its organization, and as its president and manager, the defendant possessed a special knowledge of the value of its stock, of which the plaintiff was ignorant; and the facts show, sufficiently, that the defendant knew that the plaintiff relied upon this statement as to the value of the stock. *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 133; *Lovejoy* v. *Isbell*, 73 id. 368, 375.

To show the defendant's knowledge of the real value of the stock of the company, and of its affairs, the court properly admitted the testimony of McQuaid as to the manner in which the stock was paid for and the company was organized.

The testimony of the plaintiff of representations of the defendant as to the amount of the stock issued, that there was none upon the market, and that plaintiff would have to pay no assessment upon it, was admissible as tending to prove the alleged representation as to the value of such stock.

From the character of *Exhibit C*, as described in the record, we find no error in admitting it in evidence. If, as claimed by the plaintiff, it contradicted the representations made to the plaintiff as to the character of the business, it was not rendered inadmissible, as proof that those representations were fraudulent, because it described the condition of the company at a date earlier than that on which the representations were made, or because the plaintiff had not seen it.

Other rulings of the trial court upon matters of evidence are so manifestly correct as to call for no discussion.

There is no error.

In this opinion the other judges concurred.