WILFRED ROBERT *vs*. WILLIAM S. FINBERG ET AL.

\* Third Judicial District, Bridgeport, April Term, 1912.
PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER and RALPH
WHEELER, Js.

In an action to rescind a contract on the ground of fraud, the complaint must set forth the facts from which the fraud is inferred, and the judgment must be based thereon.

Fraudulent representations, other than those alleged, which tend to prove the representations relied on, their character, and also the purpose of their making, are admissible in evidence as a part of the fraudulent transaction.

Although representations as to value are ordinarily matters of opinion and not actionable, a representation that a farm is worth $25,000 when it is worth $5,000, made as part of a fraudulent scheme to sell the property by men with full knowledge of its falsity, to an inexperienced person who neither knew nor had the means of knowing that the statement was false, is such a fraudulent representation as will support an action either for fraud or to rescind. Such gross misrepresentation of value is a fact instead of an opinion.

That the defrauded party knew that the conspirators had paid only $11,000 for the farm did not, as a matter of law, prevent the trial court from finding that the injured party relied upon the representation as to value.

The defrauded party is bound to act with reasonable promptness in seeking his relief. Usually this, especially in an action of fraud, is a question of fact, and when there is no finding that the delay was unreasonable, this court cannot, on appeal, ordinarily so hold as a matter of law. Unless the claim is made in the pleadings, or on the trial, that the delay in bringing the action was unreasonable, this court will not predicate error thereon.

Only errors involving substantial injustice to an appellant can afford him redress on appeal.

\* Transferred from first judicial district.

Robert *v.* Finberg.

The plaintiff, upon rescission, is entitled to restoration and no more. By the judgment the plaintiff received what he parted with and retained what he obtained on the sale. *Held* that the judgment should be modified so as to restore to the defendants, so far as possible, that which the plaintiff received from them.

Argued April 23d—decided July 19th, 1912.

ACTION to decree a mortgage void, to secure a reconveyance of certain real estate, and for damages for fraud in sale of real estate, brought to and tried by the Superior Court in Litchfield County, *Case, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *Error in part.*

The defendants, Finberg and Friedland, both shrewd and capable business men of the Borough of Brooklyn, New York, after inspecting a farm at New Milford, owned by a Mrs. Jones of New Milford, contracted to purchase the same for $11,000. Before acquiring title, Finberg gave one Lang an option to purchase said farm for $12,000. One Fackner introduced Lang to the plaintiff, Robert, who was twenty-three years of age, inexperienced in business, ignorant of farms, and easily imposed upon in business transactions of the character involved here. Lang introduced Robert to Finberg and Friedland, as a possible purchaser of the farm. Finberg represented to Robert that he and Friedland had contracted to purchase the farm, and owned it; that it contained four hundred acres; that it had been purchased of Friedland for $25,000 cash, and he had paid him one half of this, and they and their families had lived upon the farm for several years; that the farm contained two hundred and fifty acres of woodland, of different kinds of wood; that there were one hundred and fifty-one acres of tillable land, in a high state of cultivation; that deer and game were plentiful; that they had sold $1,000 worth of hay a year from the farm, as well as $600 or $700 worth of apples a year; and that their

reason for selling so cheap was because their wives could not agree.

On January 6th, 1909, Finberg and Friedland carried out their contract with Mrs. Jones, and took title to the farm. And on the afternoon of that day Finberg, Lang, and Robert, at Robert's request, went to New Milford, and on the next day visited the farm. There Finberg pointed out to Robert some woodland, and said the timber was worth $15,000, and also pointed out what he said was marble and granite. The weather was cold, and there was snow on the ground, and the inspection of the farm was confined to a few hundred feet from the house.

Finberg, on the return to New York, said that one Hettesheimer had offered to lease the farm for $1,200 a year, but they wanted $1,500; that the New Milford Savings Bank would loan $7,500 on the farm, but on Robert's saying he would telephone the bank, Finberg said they would take the loan. Finberg dissuaded Robert from seeing his own lawyer, and later said Hettesheimer had offered to lease for $1,500, and advised him to hurry and buy. At about this time Robert saw Mrs. Jones and learned she had sold the farm to the defendants for $11,000.

The market value of the farm at the time of its sale to Robert was $5,000, and it produced, in 1909, seven barrels of apples, valued at $2 a barrel, twenty-three baskets of peaches, valued at $1 a basket, five bushels of plums, valued at $1 a bushel, and twenty-two tons of hay, valued at $15 a ton.

The statements made by Finberg and Friedland to Robert respecting the value of the farm; its productiveness and natural features and resources were misrepresentations; were made for the purpose of inducing said sale; were calculated to deceive, and did deceive, said Robert, who relied thereon.

The statements made by Finberg and Friedland to Robert to the effect that they were the owners of the farm; that they had paid $25,000 for it; that they had lived on the farm; that gold had been found buried there; that there was but one real-estate agent in New Milford; that the farm was then rented to Mrs. Jones for $900 a year; that Hettesheimer would lease the farm for three years at $1,500 a year; that the New Milford Savings Bank would take a mortgage of $7,500 on the property; that the reason for selling was because their wives could not agree; that the Title & Guaranty Company would guarantee everything to Robert,—were also misrepresentations, and were made for the purpose of inducing said sale, were calculated to deceive, and did deceive, said Robert, who relied thereon.

Robert saw Hettesheimer a few days after returning from New Milford, and offered to lease the farm to him for $2,000, but he only offered $1,500. Robert took title to said farm January 28th, 1909, and paid the defendants therefor $15,000, viz: $5,000 in cash, the equity in the Brooklyn real estate, described in paragraph eight of the complaint, valued at $2,500, but in fact worth $1,800, and a $7,500 mortgage on said farm. After the title passed, Robert saw Hettesheimer who, before reference was made to the matter of leasing the farm, said he had leased another farm.

Robert read over the deed at its delivery, and on re-reading it a few days later discovered it described the property as containing two hundred and thirty-nine acres more or less, following the description of earlier deeds in the chain of title, instead of the four hundred acres, as represented. He thereupon consulted his attorney. Two or three weeks after receiving the deed, Robert offered the farm for sale for $20,000, by advertisement and otherwise.

On July 27th, 1909, after receiving notice that his in-

terest would be due on July 28th, Robert demanded of Finberg that he return the $5,000 cash, a deed of the Eldert Street property, and a release of the mortgage on the farm.  These demands were refused.

*Howard F. Landon,* and *Joseph J. Baker* of New York, for the appellants (defendants).

*Eugene C. Dempsey,* for the appellee (plaintiff).

GEORGE W. WHEELER, J.  The transaction which led to this (No. 412) and the companion action (No. 413) is the story of a fraudulent conspiracy, successfully consummated, by which shrewd and experienced men played upon the credulity and ignorance of a callow young man, and stripped him of a considerable part of the little inheritence left him by his father. The record is an indubitable demonstration of the fraud. Judicial uncovering of the fraud makes redress imperative.

In a case of this character it is especially true, that no errors in the trial, except those involving some substantial injustice to an appellant and making it doubtful whether the law has been administered to him with impartiality, should stay its sentence.

The defendants assert that the fraudulent representations of the complaint, except as to the single item of value, are not found in the proof, and that the judgment must follow the facts of the complaint.  This is the law.  The complaint must set forth the facts from which the fraud is inferred, and the judgment follows these.  *Gates* v. *Steele,* 58 Conn. 316, 318, 20 Atl. 474; *Bradley* v. *Reynolds,* 61 Conn. 271, 279, 23 Atl. 928.

The finding does present a series of representations in addition to those alleged; as to these recovery could not be had in this action.  But the finding also presents

fraudulent representations which appear in the com-plaint other than those relating to value. Among these are those relating to the acres of woodland and of till-able land, to the presence on the farm of a brook and pond, of deer and game, and of granite. All of these representations, as well as those relating to value, the court finds were calculated to deceive, and did deceive, the plaintiff. Fraudulent representations, quite apart from those as to value, amply sufficient to support the judgment, were thus alleged and proved.

The defendants object to the admission of fraudu-lent representations other than those alleged. In the proof of such a fraud all of the circumstances of the transactions, and all of the representations made, nec-essarily became a part of the evidence. They tended to prove the representations relied on, and they tended to prove their character, and also the purpose of their making.

Every incident of a fraudulent transaction is admis-sible, whenever any part of that transaction is called in question in judicial proceeding. The point was settled adversely to the defendants in *Shelton* v. *Healy*, 74 Conn. 265, 270, 50 Atl. 742, where we said: "Represen-tations differing from but tending to prove those alleged, may be shown, and to enable the court or jury to under-stand the meaning of the statements made by the de-fendant, and relied upon as proving the alleged rep-resentations, the plaintiff may often properly be per-mitted to prove the entire conversation in which state-ments occur, even though representations materially different from those alleged are thereby shown."

We cannot agree with the defendants that, under the circumstances of this case, misrepresentations as to value could not support such an action as this. A rep-resentation that a farm is worth $25,000, when it is worth $5,000, made as part of a fraudulent scheme to

sell the property, made by men with full knowledge of its falsity, to an inexperienced young man who neither knew nor had the means of knowing that the statement was false, is such a fraudulent representation as will support an action either for the fraud or to rescind.

Representations as to value are ordinarily matters of opinion, and not actionable. We pointed out several exceptions to this general rule in *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 39 Atl. 104; and *Shelton* v. *Healy*, 74 Conn. 265, 50 Atl. 742, furnishes another exception, where the representation of value was held to be a fact instead of an opinion. This rule of law is not unbending. Exceptions to it will multiply as fast as the prevention of fraud requires. A single representation as to value in a plain and aggravated case of cheating will suffice to hold a vendor. 20 Cyc. 51. That the plaintiff knew the defendants had only paid $11,000 for the farm did not, as a matter of law, prevent a finding that the plaintiff relied upon the representation as to value. Nor can it be said as matter of law, under the facts of this case, that the plaintiff had no right to rely upon the representations made. The trial court has found that the plaintiff did rely on them, and its finding is conclusive.

We agree with the defendants that the representations as to the lease with Hettesheimer was not, on the facts stated, fraudulent. Had this been the only representation upon which the court's action was taken, we should have reached another conclusion; since it was one of a number, it is unimportant whether or not the court incorrectly relied upon this.

The defendants urge that the plaintiff, after ascertaining that he had been deceived, did not act with sufficient promptness in seeking his relief. Some features of the finding give considerable countenance to this claim. Usually such a question, especially in an action of fraud,

is one of fact; and when there is no finding that the delay was unreasonable, we cannot, on appeal, ordinarily so hold as matter of law. *Fox* v. *Tabel,* 66 Conn. 397, 400, 34 Atl. 101. In this case the court has not found the delay was unreasonable; it has by its judgment found otherwise. Nor are the facts so exceptional as to fall outside this general rule. If the case were one where the conclusion, that the delay in bringing the action was unreasonable, should be held to be erroneous, the defendants would have been prevented from making this claim by their failure to raise the question in the pleadings or on the trial.

The defendants insist that the plaintiff has in the relief sought elected to sue for a rescission rather than for damages. Looking at the record, and at the prayers for relief of Robert in each case, we concur in this view. And it is apparent that the trial court disposed of these cases on this theory, and that this was, under the pleadings, the only course open.

One of the assignments of error presents the question whether the judgment was erroneous in not providing for a reconveyance of the farm by the plaintiff. As the judgments stand, Robert recovers his $5,000 and the Brooklyn real estate he parted with, and is released from the obligation of the mortgage of $7,500 given by him, and retains title to the farm, valued by the court at $5,000. The plaintiff receives what he parted with and retains what he obtained on the sale. The judgments were doubtless so framed through inadvertence. The plaintiff, upon rescission, was entitled to restoration, and no more. 2 Pomeroy on Eq. Juris. (3d Ed.) § 910. *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 39 Atl. 104. The motion to correct is without merit.

The judgment should be modified to read as follows: Whereupon it is adjudged that the note and mortgage as described in the complaint be decreed void; that the

defendants convey to the plaintiff the said equity in the real estate described in paragraph eight of the complaint by a sufficient deed if within their power, or pay the plaintiff $1,800, with interest from January 28th, 1909, and that the defendants pay the plaintiff $5,000 upon being tendered by the plaintiff a quitclaim deed of the farm, described in paragraph five of the complaint, free from encumbrances placed thereon by the plaintiff; and that the plaintiff recover his costs taxed at

There is error in part, the judgment is set aside, and the cause remanded with direction to the Superior Court to render judgment in accordance with this opinion.

In this opinion the other judges concurred.