ROBERT A. DAVIDSON, ADMINISTRATOR, (ESTATE OF CATHERINE A. DAVIDSON) *vs.* CHARLES J. O'CONNELL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 13th, 1931—decided January 12th, 1932.

*Charles S. Hamilton,* for the appellant (plaintiff).

*Harold E. Drew,* with whom, on the brief, was *Frederick W. Holden,* for the appellee (defendant).

AVERY, J.  This action was brought originally by Catherine A. Davidson, and upon her death, before trial, her husband, as administrator of her estate, was substituted as plaintiff.  The complaint alleges that in June, 1924, because of the misrepresentations and fraud of John B. Davidson (brother of the plaintiff and brother-in-law of plaintiff's intestate), William A. Nelson, M. A. Crossman, and the defendant, she was induced to execute a blank deed, which was afterward filled in without her knowledge and consent, and recorded so as to appear to convey to the defendant a certain piece of land in Derby; and damages are claimed on account thereof against the defendant, Charles J. O'Connell, the purchaser of the property, alone.  No prayer for a reconveyance was made in the pleadings; and, in the course of the trial in open court, plaintiff's counsel expressly waived any such claim.

At the trial before the jury, the plaintiff claimed to have proved that about June 4th, 1924, his wife was desirous of selling her property in Derby; and her brother-in-law, John B. Davidson, came to her home and discussed the matter with her and her husband. She thereupon authorized him to undertake to find a purchaser, but not to make a sale until she was consulted regarding the price and terms.  Thereafter, Davidson again called upon her and informed her that he had conferred with Crossman, a real-estate broker, and had requested the latter to find a customer.  At that time Davidson asked her to sign a blank quitclaim deed which he had brought with him and informed her she should sign it so that the broker would know she

was the owner of the property, and could proceed with the sale thereof. Thereafter, she signed the blank deed and delivered the same to Davidson, believing his representations when she signed. Later, about June 10th, 1924, she caused oral notice to be given to him to proceed no farther in regard to the sale of the property. June 16th, 1924, she gave a similar written notice to Nelson, who represented various mortgagees of the premises, and, at that time, was undertaking to assist in the sale of the property. Thereafter, June 20th, 1924, Crossman caused the blank deed, which had been signed by the plaintiff's intestate and witnessed by Davidson, to be filled out with a description of the premises and Crossman himself signed as a witness, and filled out the acknowledgment as if taken before himself as a notary public. It was further claimed that the plaintiff's intestate never saw the paper after it was completed, and was not consulted with regard to its contents, and did not appear before Crossman and acknowledge it as her deed; that Crossman previously had had several real-estate dealings with the defendant, O'Connell, and that the latter was acquainted with the plaintiff's intestate but never talked with her about the purchase of the premises; that the fair market value of the property at the time of the trial was between $30,000 and $36,000, subject to mortgages aggregating $16,500; that the plaintiff's intestate received no consideration or payment for her interest in the premises except that John B. Davidson had tendered a check for $250 in payment of her equity therein, which she did not accept; that the defendant, O'Connell, under the quitclaim deed, went into possession, and has held the property ever since, taking the rents and profits thereof, and claimed the premises to be his; and that afterward the plaintiff gave notice to the defendant that the conveyance was invalid, and the

plaintiff's intestate intended to claim the premises as her own.

The defendant claimed to have proved that he purchased the property June 20th, 1924, through Crossman, the real-estate broker, and paid for the same $17,505; that the purchase price was paid by assuming mortgages thereon in the sum of $15,000, and by the payment in cash of $2505. At the time of the purchase, the defendant took delivery from Crossman of a quitclaim deed executed by the plaintiff's intestate, bearing date June 20th, 1924. Some time previous, the interest on the various mortgages had become past due and unpaid, and the holders were pressing for payment and were threatening foreclosure; also taxes due on the premises had become in arrears, and liens for these taxes had been filed by the town of Derby. William A. Nelson, president of the Savings Bank of Ansonia, as representative of the various mortgagees, took charge of the collection of the mortgages and interest, and discussed with the plaintiff's intestate and John B. Davidson the desirability of her selling the premises for the reason that she could no longer carry the same. Previously, Davidson had acted as conservator for the plaintiff and for a period of time had managed his real estate and other property. In other ways he had befriended the plaintiff, his wife and family, and some years before had taken up a second mortgage on their home. He had charged nothing for his services as conservator and had never asked for nor been paid any interest on his mortgage. On learning of the difficulties of plaintiff's wife concerning the property, he conferred with her and advised that it be sold for the reason that she could no longer carry it and stood the risk of losing her home. Thereupon, she made him her agent to sell the premises and attend to the details; and, about the same time, she conferred with Nelson concerning

the sale and asked him to help in selling the same. Thereafter, Davidson and Nelson engaged Crossman as a real-estate broker to sell the property. About June 16th, 1924, Nelson received a letter from the plaintiff's intestate, advising him that she and her husband had decided not to sell. Immediately after this, she called upon Nelson and advised him to pay no attention to the letter as she had written it under compulsion of her husband, and desired to go on with the sale. On learning of the receipt of the letter by Nelson, John B. Davidson interviewed her and the plaintiff; and, after some conversation, they both told him to proceed with the sale. Thereafter, Crossman, as broker, interested the defendant in the purchase of the property, and arranged the sale to him at a price of $17,505. Crossman advised John B. Davidson of the proposed sale, and requested him to get the title deeds to the property in order that a deed could be prepared to complete the transaction. Thereupon, Davidson asked the plaintiff's intestate to send him the title deeds of the premises, which she did on that day, and he delivered the same to Crossman, who thereupon undertook to prepare a deed for the purchaser; but found that the last title deed from the plaintiff to plaintiff's intestate was not among those delivered to him by Davidson. He thereupon called Davidson to his office, who called the plaintiff's intestate on the telephone, and told her the deed desired by the broker was missing, and for her to search further for it; that he would come up for it soon; and if it could not be found, she would have to sign a blank deed which he would bring with him, which could be filled out afterward by the broker from a description to be obtained from the town clerk's office. Immediately thereafter, Davidson called at the home of the plaintiff's intestate, where he found her with the plaintiff, and after a

further unsuccessful search for the missing deed, the plaintiff's intestate signed the blank deed, and Davidson signed the same as a witness. Davidson took the deed and delivered it to Crossman, who obtained from the town clerk a description of the premises and filled the same into the blank deed, and likewise filled in the name of the grantor and grantee, and the acknowledgment thereof, making the same to appear on its face full and complete in every respect. On the same day, certain persons who claimed to have a judgment lien on the premises in a large sum, refused to wait longer for satisfaction at a figure reduced from the face thereof at which they were willing to compromise on that day if satisfied. Crossman delivered the deed to the defendant and received from him the purchase price of $17,505. Thereafter, Crossman rendered an accounting of the proceeds of the sale and delivered a copy thereof to Nelson and to John B. Davidson. Thereafter, the latter advised the plaintiff's intestate that he had a check for $250 for her, being the amount shown on the statement of Crossman as due, but the plaintiff's intestate did not accept the same.

The defendant claimed to have proved that the purchase price paid by him was fair and reasonable; that he knew of none of the facts concerning the execution by plaintiff's intestate of the deed received by him at the time of its acceptance, and knew none of the details concerning the execution thereof until long after purchasing the property; and knew nothing of the transaction between the plaintiff's intestate and John B. Davidson and Nelson or between Nelson and Davidson and Crossman until long after the purchase of the premises; and after purchasing the premises, the defendant never had any communication whatsoever from the plaintiff's intestate concerning the purchase thereof, nor any claim on her part that there was any-

thing wrong with the transaction. The first he learned
of any such claim was when served with the writ in
this action. Shortly after the purchase of the prop-
erty by the defendant, the plaintiff himself approached
the defendant, claiming to have a mortgage upon the
premises and demanding payment thereof, which the
defendant refused after investigation of the records.
On numerous occasions, after the bringing of this
action, the plaintiff discussed the matter with the de-
fendant and advised the defendant that he did not
blame him in any way concerning the matter, but did
blame Crossman and Nelson. On one occasion, plain-
tiff told the defendant that he did not blame his
brother, John B. Davidson, concerning the matter and
said he never did blame him. After this action was
brought, the defendant offered to reconvey the prop-
erty, but the plaintiff stated he was not interested
therein, but wanted money.

The jury rendered a verdict in favor of the defend-
ant and the plaintiff assigns as error the failure of the
court to set aside the verdict; also errors in failing to
charge in accordance with the plaintiff's requests, and
in the charge as delivered, and in certain rulings on
evidence. In so far as the complaint stated a cause
of action based upon fraudulent representations, the
plaintiff, upon discovery of the fraud, had two reme-
dies open to him; either to disaffirm the transaction
and return the money received by her therefor and then
recover back her property, or to affirm the transaction
and recover damages suffered by her for the fraud.
She could not pursue both remedies. *Bitondi* v. *She-
ketoff,* 91 Conn. 123, 126, 99 Atl. 505; *Lowe* v. *Hend-
rick,* 86 Conn. 481, 484; 85 Atl. 795; *Robert* v. *Finberg,*
85 Conn. 557, 564, 84 Atl. 366; *Wilson* v. *Nichols,* 72
Conn. 173, 180, 43 Atl. 1052; *Tuttle* v. *Jockmus,* 111
Conn. 269, 280, 149 Atl. 785; *Goldberg* v. *Krayeske,*

102 Conn. 137, 138, 128 Atl. 27. The plaintiff, therefore, by suing for damages and not for the return of her property and the cancellation of her deed, elected to affirm the deed and the transaction and to claim damages because of the fraud claimed to have been perpetrated upon her. An examination of the evidence discloses that the jury could reasonably have found that the defendant, O'Connell, bought the property in perfect good faith, giving a valuable consideration therefor, namely, the assumption of the mortgages upon it and $2505 in cash; that he had no knowledge of the fact that the deed had been filled out by others after it had been signed in blank by Mrs. Davidson; that when it was received and accepted by him, it was completely filled out as a good deed; and that he was an innocent party in the transaction and had committed no fraud. On such a state of the evidence, the verdict of the jury upon this phase of the case must stand. Relief on the ground of fraud can be had only against those who have been shown to have been parties thereto. *Loverin* v. *Kuhne,* 94 Conn. 219, 226, 108 Atl. 554; *Strong* v. *Smith,* 62 Conn. 39, 43, 25 Atl. 395; *Tilden* v. *Greenwood,* 149 Mass. 567, 22 N. E. 45, 46; 27 Corpus Juris, 8; 12 R. C. L. 399.

The plaintiff in his requests to charge made certain further claims as to the cause or causes of action he was asserting, the exact nature of which it is very difficult to determine and which were contradictory of each other to a considerable extent. Confronted with this situation, the trial court, after the arguments were concluded, interrogated the plaintiff's counsel as to the exact claim he was asserting, and counsel stated that he was claiming that the deed to the defendant was invalid and void, but that the plaintiff was waiving any right to have the property restored and was asserting a claim to recover the value of the equity in it plus

the value of its use and occupation. The reasonable purport of this statement of claims is this: The deed of the premises to the defendant was not executed and recorded in accordance with the requirements of the statute and was therefore invalid; its delivery to the defendant was unauthorized; in itself it could convey no title to the land; nevertheless the plaintiff waived the defects in its execution and the lack of authority in its delivery and recognizes it as conveying a good title; but, by so doing, a duty is placed upon the defendant to make him reasonable compensation. It is not a disputed issue in the case that the deed was delivered as a result of an agreement of sale made by the defendant with John B. Davidson through Nelson. The position of the plaintiff necessarily involved a ratification of that delivery. But she could not ratify the delivery and disaffirm the agreement in pursuance of which it was made. *Bitondi* v. *Sheketoff, supra.* Inasmuch as the defendant took title under that agreement, so ratified, the only right of action the plaintiff could have against him would of necessity be based upon it and not upon a claim that he was wrongfully holding the premises under a void deed. The waiver of the defects in the execution of the deed and the ratification of its delivery related back to the time it was delivered; *Mereness* v. *DeLemos,* 91 Conn. 651, 656, 101 Atl. 8; 21 R. C. L. p. 919; hence from that time the defendant must be regarded as being in occupation of the premises as of right and not bound to account for rents or profits or the value of their use. Upon facts which we must regard as not in dispute, it follows that the claim of the plaintiff to recover from the defendant the reasonable value of the equity in the property, or the value of its use or the rents and profits arising from it was without foundation, and the trial court was under no obligation to submit the issues attempted to be

raised upon this phase of the case to the jury. The charge as given was adapted to the issues growing out of the claims of the plaintiff as to fraudulent misrepresentation and the trial court was not in error in not submitting the other claimed causes of action to the jury. It follows also that the motion to set the verdict aside was properly denied.

With regard to the rulings on evidence, the only apparent relevancy of the questions asked the witness Populizio as to the market value of the building he had erected on the premises would be upon the issue of the amount of damages, and in view of the verdict for the defendant the ruling excluding it is of no consequence. The plaintiff, having testified about the transaction, the court properly permitted him to be cross-examined as to statements and acts inconsistent with his testimony and also as to acts of kindness and friendship toward him and his family by his brother, John B. Davidson, who, as he had previously testified, was a party to the misrepresentations and fraud practiced on his wife. Testimony as to such acts was relevant as showing the situation of the parties and its bearing upon the reasonableness of the charge of fraud made against the defendant by the plaintiff. For the same reason, the court properly permitted the defendant to offer evidence as to such acts of kindness and also evidence of prior statements of the plaintiff inconsistent with his testimony on the trial. Nelson and Crossman were claimed by the plaintiff to have been parties to the transaction, and the court properly permitted them to testify on behalf of the defendant as to what they said and did in connection therewith. Such evidence was admissible as part of the *res gestae.*

There is no error.

In this opinion the other judges concurred.