ASTRID ELLEN POULSEN WEIL vs. HANS RASMUS POULSEN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and JENNINGS, Js.

Argued January 10th—decided April 7th, 1936.

*John T. Robinson,* with whom was *L. Horatio Biglow,* for the appellant (defendant).

*Nathan Aaron,* with whom was *Benjamin A. Markman,* for the appellee (plaintiff).

AVERY, J. The plaintiff and defendant were married at Copenhagen, Denmark, on April 30th, 1910.

In that year, they came to the United States and established their residence in Brooklyn, New York, and lived there together as husband and wife until shortly before August, 1923, when they separated. On February 13th, 1919, they legally adopted an infant child who is now seventeen years of age. Since the parties separated, the child, a girl, has been with the plaintiff and been cared for by her. On August 23d, 1923, after the parties had separated and while they were living apart, they entered into an agreement which contained provisions fixing their respective rights and interests in their real and personal property; and, in addition, provided that the daughter should live with the plaintiff, subject to rights of visitation on the part of the defendant; that he should pay the daughter's tuition in a private school; and also pay the plaintiff for her own support and that of the child $15 a week until August 23d, 1924; $20 a week until August 23d, 1925; and thereafter $25 a week "during the natural life of" the plaintiff. The present suit is brought upon this contract, the claim in the complaint being failure to make the payments for support as therein provided. The plaintiff asks money damages and, in addition, an order compelling the defendant to continue to make payments as provided in the contract and for other equitable relief necessary in the premises. The answer, after denying the substantive allegations of the complaint, sets up a later separation agreement, dated December 10th, 1924, limiting the obligation to pay for the support of the plaintiff and the child to the period of the natural life of the plaintiff "or until she remarries in case the plaintiff and defendant are legally divorced," and alleges that the parties were subsequently divorced and that the plaintiff has remarried. A cross-complaint was also filed claiming damages and an accounting for the proceeds of property mentioned

in both agreements. The plaintiff filed an answer to this cross-complaint denying that she had signed any agreement affecting or altering the contract of August 23d, 1923; and that if she did sign another agreement, her signature was obtained by fraud and misrepresentation.

The trial court found that payments in the amount of $13,085 were in arrears under the contract and, after allowing $800 for paintings of the defendant sold by the plaintiff, rendered judgment for the plaintiff to recover $12,285, and cancelling the agreement of December 10th, 1924, on the ground that her signature thereto was procured by the defendant's fraud. The vital issue on this appeal is whether the provisions in the first contract, obligating the defendant to pay to the plaintiff a fixed sum weekly during her "natural life," were superseded by the provisions of the agreement of December 10th, 1924, that these payments were to continue until the plaintiff "remarries in case the parties are legally divorced."

The trial court has found these facts: After the parties had separated, the contract of August 23d, 1923, was prepared by counsel and executed and was an instrument under seal, properly signed, witnessed and acknowledged. The defendant had fallen behind in his payments thereunder in April, 1925, and since then has paid nothing. In May, 1924, the parties filed a petition with the King of Denmark asking for a divorce. The petition was made at the desire and suggestion of the defendant, and included a reference to alimony which the defendant would pay for the support of his wife and adopted child in accordance with an agreement referred to and incorporated in the petition. The petition for divorce as originally filed was returned to the defendant because the Danish authorities required certified copies of the separation

agreement. On December 10th, 1924, the defendant wrote the plaintiff that their petition for divorce had been denied because the Danish authorities required three certified copies in Danish of their agreement signed by both parties and further information about their adopted child, which information he refused to supply. Subsequently, on the same day, after conference with the Danish consul, who stated that he would make a declaration to the Danish authorities about the adoption of their child which would suffice, the defendant decided to renew his attempt to obtain a Danish divorce, and thereupon, by his second letter of December 10th, 1924, he requested the plaintiff to sign under his name the enclosed translation of their agreement and return it to him. At that time, the agreement of August 23d, 1923, was the only one ever entered into in writing between them.

The plaintiff, on December 10th, 1924, signed the three Danish translations enclosed in the letter. She did not read the translation word for word but glanced through it and did not discover or suspect that any change had been made in the essentials of their original contract, but believed the translation to be a brief version of the principal provisions of their separation agreement without any material change in the terms thereof. Except for the change in regard to the effect of the plaintiff's remarriage, the translation does contain a brief version of the principal provisions of the separation agreement. From August 23d, 1923, until December 10th, 1924, the defendant never suggested either orally or in writing any change in the terms of their separation agreement. The trial court found that the plaintiff's signature to the second agreement was obtained by the deliberate fraud and deceit of the defendant. The defendant challenges the finding of fraud and in this connection has requested nu-

merous changes in and additions to the finding, but there is no occasion upon this appeal to consider the issue of fraud. The trial court also found these additional facts: On February 3d, 1925, the King of Denmark granted a divorce to the parties on the ground of the infidelity of the defendant. On November 2d, 1925, the plaintiff married her present husband, Eric Weil; and on April 24th, 1926, the defendant remarried.

The separation agreement of August 23d, 1923, was made in New York between parties there domiciled and was plainly a New York contract to be governed in its interpretation by the laws of that State. *Kranke* v. *American Fabrics Co.*, 112 Conn. 58, 60, 151 Atl. 312; *Levy* v. *Daniels' U-Drive Auto Renting Co., Inc.*, 108 Conn. 333, 338, 143 Atl. 163. In New York, a contract between husband and wife who are actually separated and living apart, providing for the support of the wife, is not considered against public policy, but such arrangements are favored. The husband, however, is not thereby relieved of the obligation imposed upon him by law to support his wife or children; *Winter* v. *Winter*, 191 N. Y. 462, 473, 84 N. E. 382; nor is such an agreement invalidated by a subsequent divorce between the parties. *Galusha* v. *Galusha*, 116 N. Y. 635, 645, 22 N. E. 1114; *Clark* v. *Fosdick*, 118 N. Y. 7, 17, 22 N. E. 1111; *Carpenter* v. *Osborn*, 102 N. Y. 552, 559, 7 N. E. 823. In Connecticut, we hold that a conveyance from husband to wife when made not to facilitate divorce but solely as an amicable settlement of property affairs made in view of divorce proceedings already independently instituted or determined upon is not necessarily contrary to public policy and void unless concealed from the court. *Mills* v. *Mills*, 119 Conn. 612, 620, 179 Atl. 5; *Maisch* v. *Maisch*, 87 Conn. 377, 383, 87 Atl. 729; *McCarthy* v.

*McCarthy,* 36 Conn. 177, 180. The agreement, therefore, was valid between the parties in New York when made and its enforcement is not against the public policy of this State.

The first agreement was under seal and the second one of December 10th, 1924, was not. The New York courts hold that where a contract is under seal, a subsequent contract designed to modify the first one, so far as unexecuted, must itself be under seal. *Mc-Kenzie* v. *Harrison,* 120 N. Y. 260, 263, 24 N. E. 458; *Enthoven* v. *Enthoven,* 232 N. Y. Sup. 599, 602; *McCreery* v. *Day,* 119 N. Y. 1, 9, 23 N. E. 198. In *Cammack* v. *Slattery & Bro., Inc.,* 241, N. Y. 39, 45, 148 N E. 781, the Court of Appeals, in commenting upon this rule, said: "While much has been said about the anachronistic absurdity of giving to seals at the present day the solemnity and force which they once justly possessed, and while courts have undoubtedly been quite ready to escape from an alleged invalidity of a contract predicated upon failure to use the seal, nevertheless this court has been unwilling to make a decision generally annulling and destroying well-settled rules pertaining to the use of seals. Such a decision without reservations, which we would be unable to make, would result in affecting contracts in a manner which would be chaotic and unjust. If the use of seals as now required is to be generally discontinued, this result should be accomplished by the Legislature, which could make proper reservations preserving the integrity and force of contracts already executed, and the task should not be attempted by us." Where a modified contract is wholly executed on both sides, the plea that the modification is not under seal will not avail the parties. *Harris* v. *Shorall,* 230 N. Y. 343, 349, 130 N. E. 572; *Thomson* v. *Poor,* 147 N. Y. 402, 410, 42 N. E. 13. By an amendment to the Civil

Practice Act, adopted in 1935—effective September 1st of that year, it was provided that "a written instrument, hereafter executed, which modifies, varies or cancels a sealed instrument, executed prior to the effective date of this section, shall not be deemed invalid or ineffectual because of the absence of a seal thereon." New York Civil Practice Act, Ninth Cum. Sup. 1927-1935, p. 54, § 342. This amendment has no application in the instant case because the modifying contract of December 10th, 1924, was made before the passage of the amendment, and as it was unexecuted, as appears by the finding, it did not affect the original separation agreement. The Danish divorce decree did not purport to alter that agreement and did not affect it. *Galusha* v. *Galusha,* supra. We conclude, therefore, that the plaintiff was entitled to recover the unpaid balance due to her under the terms of the original agreement.

The claim of the appellant that because the agreement of December 10th, 1924, was annexed to and referred to in the judgment of divorce granted by the Danish court and because that judgment was under seal, the agreement was thereby constituted a contract under seal, cannot prevail. The second agreement was complete when signed by the parties and, except for the reason already given, would have been a valid and subsisting agreement under the laws of New York. *Manchester* v. *Tibbitts,* 121 N. Y. 219, 222, 24 N. E. 304; *Winter* v. *Winter,* supra. At that time, it was unsealed. That it was afterward referred to and embodied in the divorce decree did not change its character from an unsealed to a sealed instrument.

In his brief, the appellant claims that the Danish divorce decree gave validity to the later agreement and that the plaintiff is now estopped, because of her remarriage, from attacking this agreement, and in claim-

ing support after her remarriage. No such claims were made at the trial and they are not presented upon this appeal. In his pleadings, the defendant nowhere places reliance upon any particular validity given to the subsequent agreement by reason of its incorporation in the Danish divorce decree. In his claims to the trial court, the only reference to the incorporation of the agreement in the divorce decree is that this gave to the agreement "equal solemnity and dignity" with the earlier one. Inasmuch, however, as the second agreement in any event did not affect the first, this claim is without merit.

Other claims of the appellant made on the record and presented in brief require but little discussion. The plaintiff alleged that she had performed all her obligations under the agreement and the defendant denied this. In the claims to the trial court, the defendant asserted that the breach of the conditions of the agreement by the plaintiff barred a recovery. In his brief, he relies on a denial to the defendant of a right of visitation to the child, a removal of the child "to remote parts," and a sale of the defendant's paintings without his consent. The trial court has not found any denial of a right of visitation and the request to add such a finding cannot be granted. There was no agreement not to remove the child. As to the paintings, the plaintiff had no right to sell them, and her doing so was a conversion. But the findings cannot be corrected as claimed to state that the plaintiff denied the defendant the opportunity to remove the paintings when the house was sold. The defendant also claimed laches. The recovery awarded was at law in contract, and laches would not be a defense in such an action.

In its judgment, the trial court ordered the cancellation of the second agreement. As the issues in the

case were framed and presented, no question as to the effect of the divorce judgment upon the rights of the plaintiff to recover the damages awarded for the failure of the defendant to perform the agreement of 1923 was involved. The cancellation of the second agreement was not asked specifically in the complaint. While the finding does not show that any claim was made at the trial by the appellant that the agreement should not be cancelled, the record does not indicate that he had any reason to anticipate that the trial court would include such a provision in its judgment, and the error is apparent and of such a nature that we should not overlook it. *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 Atl. 231. The judgment should not have included the provision cancelling and setting aside the agreement incorporated in the divorce decree.

There is error, the judgment is set aside and the case remanded with direction to enter judgment for the plaintiff to recover damages only, being the principal sum awarded in the original judgment with interest to the date of the new judgment.

In this opinion the other judges concurred.