A. SANGIVANNI AND SONS v. F. M. FLORYAN AND COMPANY, INC., ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued October 14—decided November 13, 1969

John J. McGrath, with whom were John E. Silliman and, on the brief, J. Read Murphy, for the appellants (defendants).

David S. Maclay, with whom, on the brief, was David P. Wolf, for the appellee (plaintiff).

COTTER, J. In this action returnable on the first Tuesday of May, 1960, the plaintiff, a sole proprietorship, sought an order directing the defendants to proceed with arbitration. The defendants formed a joint venture and entered into a construction contract with Wallingford Shopping Plaza, Inc., on March 26, 1959, in which they agreed to

construct a shopping center. On March 31, 1959, the defendants and the plaintiff entered into a subcontract in which the plaintiff agreed to perform the excavation, site work and paving in accordance with the plans and specifications and the provisions of the general contract. The subcontract between the parties contained an arbitration clause. In the course of the performance of the subcontract, two principal disputes arose between the parties regarding the plaintiff's claim for extra compensation for rock excavation and the failure of the plaintiff to resume paving operations in the spring of 1960. By reason of the latter dispute, the defendants terminated the subcontract on or about April 5, 1960. The plaintiff instituted a separate mechanic's lien foreclosure action against Wallingford Shopping Plaza, Inc., the owner of the property which was the subject of the subcontract, returnable to the Court of Common Pleas for New Haven County on the first Tuesday of October, 1960, in which action the defendants were subsequently joined. The plaintiff closed the pleadings in the present action with an amended reply filed September 7, 1967. The case was discontinued on May 13, 1968, pursuant to an order of the court. Upon motion of the plaintiff, the case was restored by the court to the docket on June 17, 1968, after a hearing. Thereafter, a judgment of nonsuit was rendered on September 12, 1968, for failure of the plaintiff to appear to prosecute its complaint. On September 16, 1968, the plaintiff's attorneys, the firm of Marsh, Day and Calhoun, filed a motion to open the nonsuit on the ground that the firm's appearance had not been printed on the September 12, 1968, list of assignments of court cases and that it did not therefore receive notice that the case was on the trial list. The defendants claim that

failure to include the firm name of Marsh, Day and Calhoun on the printed assignment list did not excuse the failure of other attorneys who had represented the plaintiff from appearing on the day the case was assigned or from notifying Marsh, Day and Calhoun of the assignment. The court, nevertheless, granted the plaintiff's motion to open the nonsuit on September 20, 1968.

The trial court, after a trial, rendered judgment on November 18, 1968, directing the parties to proceed with arbitration of such disputes as exist between them pertaining to the contract. The defendants have appealed.

The defendants, in their answer, denied the allegations in the complaint, admitting, however, that the parties "entered into a written agreement on or about March 31, 1959, providing for arbitration under certain conditions and circumstances, but the plaintiff's demands and the matters in controversy are clearly outside of the orbit" of the arbitration agreement. In addition, the defendants, at various times, filed nine special defenses raising issues that (1) the plaintiff will claim upon arbitration that it was induced to enter into the agreement through misrepresentation and fraud concerning the quantity of rock to be encountered under the subcontract, and that such a "claim for fraud can only be asserted and determined in an action at law" and not in arbitration; and that no bona fide arbitrable issue exists because (2) the plaintiff abandoned the contract, (3) the plain language of the contract precludes extras for rock excavation, demolition or rock conditions encountered by the contractor at the construction site, (4) the plaintiff failed to advise the defendants in writing upon encountering rock before proceeding to blast and remove it, (5) institution of

the present action was premature because the work which the plaintiff was obligated to perform was not entirely finished, (6) the plaintiff, contrary to a provision in the contract, did not obtain an interpretation from the architect as to whether or not work allegedly performed, for which the plaintiff claims or will claim extra compensation, was covered in the plans and specifications, and (7) the plaintiff failed to obtain written authorization for the performance of extra work, payment for which the defendants believe the plaintiff will make a claim upon arbitration. The defendants concluded the list of special defenses by alleging that (8) commencement of the action to foreclose the mechanic's lien constituted a waiver of whatever right the plaintiff may have had to compel arbitration and (9) the plaintiff was guilty of laches in not diligently prosecuting this action to compel arbitration.

Of the salvo of defenses interposed by the defendants relating to nonarbitrability, only one merits any extended discussion. That one has to do with the defendants' allegation in their first special defense that the plaintiff's claim has been, and upon arbitration will be, that the plaintiff was induced to enter into the subcontract "by the misrepresentation and/or fraud of the defendants and/or the owner, Wallingford Shopping Plaza, Inc., regarding amounts of rock to be excavated."

The language of the contract determines whether the arbitrability of a dispute is a question for the court or for the arbitrators. The parties are free to set the limits of the arbitrators' authority, but, once having agreed upon those limits, they cannot, except by mutual consent, vary them. *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d

646. The arbitration clause in the contract before us called for arbitration "[i]n case of any disagreement pertaining to this contract" with one exception, viz., it was not to apply to the architect's interpretation of the requirements of the plans and specifications. The record does not indicate that the architect ever made an interpretation of the plans and specifications so that this exception to the arbitration clause is not material to a disposition of the issues. Whether or not the plaintiff is entitled to extra compensation for rock excavation is a disagreement "pertaining to" the contract. The defendants assert, however, that the gravamen of the plaintiff's claim is fraudulent inducement to enter the contract and that such a claim is not arbitrable. If we assume, arguendo, that the defendants have accurately characterized the essence of the plaintiff's claim, we cannot agree with their conclusion. Fraud in the inducement of a contract ordinarily renders the contract merely voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages. *Davidson* v. *O'Connell,* 114 Conn. 116, 122, 158 A. 207; 37 Am. Jur. 2d, Fraud and Deceit, § 327. If he pursues the latter alternative, the contract remains in force, and where the contract contains a broad arbitration clause, that clause too is binding on the parties. The mere fact that the plaintiff will or may claim fraudulent inducement does not, therefore, give the defendants any right to refuse to arbitrate a "disagreement pertaining to" the contract. *Lummus Co.* v. *Commonwealth Oil Refining Co.,* 280 F.2d 915, 927 (1st Cir.), cert. denied, 364 U.S. 911, 81 S. Ct. 274, 5 L. Ed. 2d 225; 6A Corbin, Contracts § 1444A; note, 91 A.L.R.2d 936, 947. The question whether the plaintiff could enforce the arbitration clause if it

sought rescission instead of damages is not before us. Note, 91 A.L.R.2d 936, 942. We are only required to hold under the circumstances that where rescission is not sought by the defrauded party, the arbitration clause remains enforceable.

The arbitration clause in the contract between the parties is sufficiently broad to include a claim for damages based on fraudulent inducement. The claims of the plaintiff are not excluded from that provision merely because they are alleged to have been occasioned by fraud or misrepresentation. See *Merritt-Chapman & Scott Corporation* v. *Pennsylvania Turnpike Commission,* 387 F.2d 768, 770 (3d Cir.); 5 Am. Jur. 2d, Arbitration and Award, § 57.5 (Sup. 1969). The defendants' claim that the plaintiff lost the right to arbitration because it stopped work owing to a dispute and therefore abandoned the contract does not constitute sufficient ground to warrant nonperformance by the defendants of the arbitration obligations. *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.,* 146 Conn. 17, 20, 147 A.2d 484; *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 10, 11, 110 A.2d 464.

Special defenses three through seven fail to set forth grounds which would invalidate the order of the court in the present case to compel the defendants to proceed with arbitration. We reiterate the rule which applies herein that the question of what is subject to arbitration is for the arbitrators under the broad and all-embracing language of the contract. *College Plaza, Inc.* v. *Harlaco, Inc.,* 152 Conn. 707, 708, 206 A.2d 832. Specific designation of arbitrable matters is unnecessary where the language of the arbitration clause indicates an intention of the parties to include all controversies which may arise under the principal agreement between them.

The trial court concluded in ruling on the defendants' eighth special defense that the plaintiff did not elect to waive its right to arbitration by instituting the foreclosure action in the Court of Common Pleas. Waiver is defined to be the intentional relinquishment of a known right. *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 643, 220 A.2d 254. In order to negate the conclusion of the court, it was incumbent upon the defendants to get into the finding such facts as would compel us to conclude that a waiver had been established as a matter of law. *Batter Building Materials Co.* v. *Kirschner,* supra, 12. In fact, the plaintiff filed a motion dated August 28, 1968, to stay the proceedings in the mechanic's lien action pending arbitration. It is apparent that the factual situation on this issue is not that certain and indisputable. The defendants' position, as urged in their brief, is that the argument of the plaintiff that it was motivated by a desire to protect its lien rights is incomprehensible inasmuch as it knew the defendants were bonded and that it must have been motivated by other causes. It is obvious in the face of the finding that, since the true meaning of the plaintiff's actions is one of intention under all the circumstances, we cannot hold that, as a matter of law, the plaintiff had waived the right to insist on arbitration.

The defendants on August 28, 1967, by amendment to their answer, added a ninth special defense claiming that "[b]y reason of [the] plaintiff's laches in prosecuting this application to compel arbitration, the defendants have been prejudiced." Laches is purely an equitable doctrine, is largely governed by the circumstances, and is not to be imputed to one who has brought an action at law within the statutory period. *Waterman* v. *A. & W. Sprague*

*Mfg. Co.,* 55 Conn. 554, 574, 578, 12 A. 240. This action to compel arbitration is brought pursuant to General Statutes § 52-410, and we have said under certain circumstances that laches is not available as a defense to an action at law. *Weil* v. *Poulsen,* 121 Conn. 281, 289, 184 A. 580. This was held to have been so since an action in a court of law is governed by the Statute of Limitations and ordinarily the defense may not be invoked in such a situation. *Cross* v. *Allen,* 141 U.S. 528, 537, 12 S. Ct. 67, 35 L. Ed. 843; 27 Am. Jur. 2d, Equity, § 154. The defendants had an adequate procedural remedy available to them to ensure a prompt trial or early disposition of the case. Practice Book § 76 requires that pleadings in civil actions shall advance at least one step within each successive period of fifteen days from the preceding pleading. Failure of the plaintiff to file a proper pleading fifteen days from October 25, 1960, the date of the filing of the defendants' eighth special defense, gave the defendants the right to proceed under Practice Book § 283 and to file a written motion for a nonsuit or default back in 1960.[1] The record fails to show that the defendants at any time utilized the procedures avail-

---

[1] "[Practice Book] Sec. 283. ——PROCEDURE WHERE PARTY IS IN DEFAULT

"Where either party is in default by reason of failure to comply with Sec. 76 or 77 or failure to comply with any order issued under Sec. 166, the adverse party may file a written motion for a nonsuit or default. Any such motion, after service upon each adverse party as provided by Sec. 80 and with proof of service endorsed thereon, shall be filed with the clerk of the court in which the action is pending, and, unless the pleading in default be filed or the disclosure be made within ten days thereafter, the clerk shall thereupon notify the court which shall enter a nonsuit or default.

"The court may, upon such terms as it may fix, set aside any such nonsuit or default for good cause shown and may extend the time for filing pleadings or disclosure, for good cause shown, in favor of a party who has not been negligent."

able to them when a party is in default in order to speed the final disposition of the case.[2] As a further aid to the parties in expediting the matter, the court or judge is empowered to hear the application for arbitration either at a short calendar session or as a privileged cause pursuant to General Statutes § 52-410. It would appear that the defendants as well had the responsibility of acting with proper diligence to use the procedures available to them for a prompt decision. The burden of proof as to the existence of laches is on the party asserting it; *Cleary* v. *Zoning Board,* 153 Conn. 513, 518, 218 A.2d 523; and a "conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906. Since the defendants could have resorted to the procedural remedies and advantages which could have been promptly invoked by them for any failure of the plaintiff diligently to prosecute the case after instituting suit, it cannot be said that the trial court acted improperly in concluding that the equitable doctrine of laches was unavailable to defeat the cause of action.

A further assignment of error by the defendants is that the court erred in granting the motion to restore. Practice Book § 190 provides for the discontinuance of the case from the docket, and Practice Book § 191 provides the vehicle pursuant to

---

[2] The discontinuance procedure discussed later in this opinion was apparently an automatic attempt by the court to remove older cases from the docket, and it does not appear from the record that the nonsuit of the plaintiff for failure of counsel to appear at the time the case was assigned for trial was the result of a motion by the defendants.

which a case is restored.[3] Verification of a motion to restore a case to the docket is not required under Practice Book § 191. The restoration of a discontinued case during the same term of court, as was done in this case, is within the discretion of the court. See *Dirton* v. *McCarthy*, 149 Conn. 172, 173, 177 A.2d 513; *Miller* v. *Bridgeport Herald Corporation*, 134 Conn. 198, 202, 56 A.2d 171. The action of the court in restoring the case to the docket was based on the detailed representations made by counsel in its motion to restore and after a hearing and did not constitute an abuse of discretion.

Finally, the defendants assign error in the granting of the plaintiff's motion to open and set aside the judgment of nonsuit, claiming that the motion was not verified as required by General Statutes § 52-212 and Practice Book § 286. It is clear from the material in the file, and that printed in the record, that the firm of Marsh, Day and Calhoun entered the case in June, 1968, and became trial counsel at that time. In spite of that fact, through error its appearance was not printed on the assignment trial list of September 12, 1968, and the firm had no notice that the case was on the trial list. Failure of the defendants to raise an objection to a

---

[3] "[Practice Book] Sec. 190. CLEARING THE DOCKET In each county, during the spring session prior to July in each year, the court shall discontinue all cases pending more than five years unless good cause for a continuance shall be shown. At least two weeks' notice of the day on which this action is to be taken shall be given to counsel of record and by printing the same on a short calendar list.

"Sec. 191. NOTICE OF DISCONTINUED CASES The clerk shall cause to be printed lists of all cases so discontinued, and mail a copy to all counsel of record, and the court shall fix a day to hear motions to restore any of said cases to the docket, notice of which shall be printed upon said lists."

478

formal defect, such as the lack of verification of the plaintiff's motion, may constitute a waiver of this nonjurisdictional infirmity. Without such a timely objection being brought to the attention of the court and the plaintiff, the opportunity to remedy the defect is lost. Thereafter, it cannot be taken advantage of on appeal. *State* v. *Grimes,* 154 Conn. 314, 323, 228 A.2d 141; Maltbie, Conn. App. Proc. §§ 49, 51. Since the record fails to disclose that the claim of lack of verification was raised at the time of the hearing in the trial court, it must be regarded as having been waived. *Breen* v. *Larson College,* 137 Conn. 152, 156, 75 A.2d 39. The motion was granted by the court on September 20, 1968, at the same term of court and was within the permissible statutory limitation and the corresponding rule of the Practice Book. The action on the motion rested in the sound discretion of the court. *Munch* v. *Willametz,* 156 Conn. 6, 9, 238 A.2d 424. The defendants have failed to show that the court abused its discretion in granting the motion.

There is no error.

In this opinion the other judges concurred.