FOLEY, J.
 

 The plaintiffs claim that on or about June 6, 1988, and for some time prior thereto, Todd M., the minor plaintiff, was a student at an elementary school in a town in Connecticut. During the 1987-88 school year, while being transported to and from school on a school bus, the minor plaintiff was allegedly subjected to repeated physical and sexual abuse by other students being similarly transported, whereby he was forced, through the threat and use of physical violence, to engage in sexually self-abusive conduct. This alleged conduct caused him to suffer the severe personal and emotional injuries set forth in the plaintiffs’ complaint.
 

 
 *530
 
 The several defendants in this action were responsible for providing, selecting or conducting all or part of the transportation of Todd and the other students to and from the elementary school. The named defendant, Richard L., as the director of transportation for the town’s board of education, was responsible for securing and supervising the transportation of children to and from the town’s public schools. The defendant, Jody O., was an employee of the town’s board of education, and was acting within the scope of his duties for the town’s board of education as the driver of the bus which transported the minor plaintiff to and from school.
 

 The plaintiffs brought this claim by an amended complaint, dated November 7, 1994, in which it is alleged that the defendants were negligent in the provision, selection and conduct of Todd’s transportation. The complaint further alleges that as a result of this negligence, Todd was subjected to abuse and to injuries suffered as a result thereof. On March 28, 1995, the defendants filed an “Amended Answer to Plaintiffs’ Amended Complaint” in which they asserted several special defenses. These defenses are the subject of this motion to strike.
 

 The first special defense asserts that the plaintiffs’ claim is barred by the limitations period provided in General Statutes § 52-584.
 
 [1]
 
 The second special defense asserts that this claim is barred by the limitations period
 
 *531
 
 provided in General Statutes §
 
 52-577.
 

 [2]
 

 The defendants’ third special defense claims that “[liability of these defendants is barred by General Statutes § 52-557n.”
 
 [3]
 
 The fourth special defense alleges governmental immunity and the fifth special defense maintains the claims
 
 *532
 
 are barred by the doctrine of sovereign immunity. The sixth special defense raises the doctrine of laches. The seventh special defense asserts that the conduct of the other students involved in this incident is a superseding cause of Todd’s injuries.
 

 A special defense is a pleading used by a defendant who seeks the admission of evidence that is not inconsistent with the claim by the plaintiff but nevertheless tends to show that the plaintiff has no cause of action. Practice Book § 164;
 
 Pawlinski
 
 v.
 
 Allstate Ins. Co.,
 
 165 Conn. 1, 6, 327 A.2d 583 (1973).
 

 A motion to strike challenges the legal sufficiency of the allegations of a complaint, or any one or more
 
 *533
 
 counts thereof, to state a claim upon which relief may be granted. Practice Book § 152 (1). “In deciding upon a motion to strike ... a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged.” (Citations omitted; internal quotation marks omitted.)
 
 Liljedahl Bros., Inc.
 
 v.
 
 Grigsby,
 
 215 Conn. 345, 348, 576 A.2d 149 (1990). The facts are to be construed in the light most favorable to the pleader.
 
 Bouchard,
 
 v.
 
 People’s Bank,
 
 219 Conn. 465, 471, 594 A.2d 1 (1991). If the facts provable under the allegations of the pleadings would support a cause of action, the motion to strike must fail.
 
 Mingachos
 
 v.
 
 CBS, Inc.,
 
 196 Conn. 91, 109, 491 A.2d 368 (1985). A defendant may raise the doctrine of sovereign immunity on a motion to strike. See
 
 Heigl
 
 v.
 
 Board of Education,
 
 218 Conn. 1, 2, 587 A.2d 423 (1991).
 

 In the first and second special defenses, the defendants invoke §§ 52-584 and 52-577 respectively in asserting that the plaintiffs’ claims are time barred. The plaintiffs maintain, however, that the applicable statute of limitations is provided in General Statutes § 52-577d, in which case the plaintiffs claim is timely.
 

 Section 52-577d provides: “Limitation of action for damages caused by sexual abuse, exploitation or assault. Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority.”
 

 The plain language of this section provides that this period of limitations applies to all claims for personal injuries to a minor caused by sexual assault or sexual exploitation. The statute provides that, regardless of the general limitations period for torts, such as those
 
 *534
 
 relied upon by the defendants, no action seeking redress for injuries suffered as a result of misconduct of a sexual nature may be brought later than seventeen years from the date of majority. This action, brought on behalf of Todd, seeks redress for personal injuries caused by a sexual assault. Under this statute, as long as this action was brought within seventeen years from the date that Todd attains the age of majority, it is timely.
 

 The defendants argue that § 52-577d only applies to actions brought against the actual perpetrators of the sexual assault.
 

 A review of the legislative history of § 52-577d is instructive. This extended statute of limitations was originally enacted in 1986 as part of “An Act Concerning Victims Rights”; Public Acts 1986, No. 86-401; which was intended to assure that victims of crime and their families were educated as to their rights and to facilitate the exercise of these rights.
 

 The portion of the victims’ rights bill that was later codified as § 52-577d was authored and introduced by Representative Richard Tulisano who remarked upon the legislation after moving for its adoption: “Mr. Speaker, this amendment effectively tolled the statute of limitations in civil cases in which a minor who has been victimized by sexual assault could bring an action against the offender — -a civil action against the offender.” 29 H.R. Proc., Pt. 12,1986 Sess., pp. 4387-88.
 

 A review of the record of debate on this bill demonstrates that it was intended to provide minor victims of sexual abuse with an opportunity to exercise their rights against the offender once they had attained the age of majority and could exercise control over their lives. See generally id., pp. 4387-97.
 

 
 *535
 
 The legislature revisited the issue in 1991 when the period of limitations was extended from seven years from the date of the alleged abuse to seventeen years from the age of majority. Public Acts 1991, No. 91-240. At that time, the Joint Standing Committee on the Judiciary heard extensive testimony from professionals and victims about the frequency of repressed memories of abuse and the need to “redress a fundamental inequity and hardship that is worked upon adult victims of childhood incest abuse when traditional rules of actual accrual are applied to the civil claims.” Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1991 Sess., p. 1141, remarks of Gail Bums Smith of the Connecticut Sexual Assault Crises Services Association; 34 H.R. Proc., Pt. 13, 1991 Sess., pp. 4704-4707, remarks of Representative Sally M. Bolster. In describing the amended legislation, Tulisano, its chief author, once again noted that “Connecticut was among the first states to recognize that minor victims of sexual assault often do not have the independence and the opportunity to bring
 
 civil actions
 
 against the perpetrators of crimes against them . . . .” (Emphasis added.) 34 H.R. Proc., supra, p. 4705. Tulisano elaborated that in these cases the only way it was thought the legislature might be able to help a victim become whole was to be able to bring a civil cause of action against the perpetrator. Id., pp. 4706-4707.
 

 The defendants further argue that of all of the states having extended statutes of limitations for civil actions for sexual abuse, only one, Minnesota, specifically provides for an action against a person who negligently permitted sexual abuse to occur. Minn. Stat. § 541.073 (1994). By contrast, a clear majority of states specifically provide for an action against a perpetrator
 
 ovúy
 
 and thereby exclude an action against a nonperpetrator, such as these defendants, from the scope of their
 
 *536
 
 extended statutes.
 
 [4]
 
 The remaining state statutes, including Connecticut, are silent as to the definition of “an action based on childhood sexual abuse.”
 

 This issue has been considered in a thoughtful and well reasoned opinion of United States District Court Judge Alan Nevas in
 
 Almonte
 
 v.
 
 New York Medical College,
 
 851 F. Sup. 34 (D. Conn. 1994), wherein the court determined that § 52-577d was not limited in application to perpetrators only. The court found that the unambiguous language of the statute indicated that the focus is on the particular type of harm that is the basis of the action rather than on the parties that are involved. In so holding, the court pointed out that “in defining the scope of the statute, courts should look to whether the underlying harm was allegedly ‘caused by sexual abuse, sexual exploitation or sexual assault’ . . . rather than whether the named defendants are potentially primarily or secondarily hable for the alleged harm.” (Citation omitted.) Id., 37. In the court’s opinion, such a “harm-based” approach was consistent with the intent of the legislature. Citing the Supreme Court case of
 
 Roberts
 
 v.
 
 Caton,
 
 224 Conn. 483, 493, 619 A.2d 844 (1994), Nevas stated that one of the purposes of § 52-577d was to allow the plaintiffs sufficient time to recall the traumatic offenses. Id. The legislature recognized that victims of abuse and exploitation may take an extended period of time to bring an action. Accordingly, the
 
 Almonte
 
 court determined that limiting § 52-577d to offenders would virtually immunize an entire class of prospective and potentially hable parties. The court determined that such a result was both contrary to
 
 *537
 
 public policy and inconsistent with the Connecticut legislature’s intent to broaden the remedies available to victims of child sexual assault, abuse or exploitation.
 
 [5]
 

 Almonte
 
 v.
 
 New York Medical College,
 
 supra, 38. This court agrees with that analysis.
 

 The facts
 
 oí Almonte
 
 involve an individual who, while a psychiatric postgraduate student at the defendant, New York Medical College, sexually assaulted and threatened a ten year old boy. Id., 36. As a result of the sexual assaults, the child suffered severe personal injury. The child’s parents filed a lawsuit on behalf of their son against the perpetrator and against the perpetrator’s analyst
 
 [6]
 
 as well as against the medical school. The analyst subsequently moved to dismiss under rule 12 (b) (6) of the Federal Rules of Civil Procedure from which the court rendered the
 
 Almonte
 
 decision.
 

 The Connecticut state courts have infrequently addressed this issue. On several occasions the issue was raised by a motion to strike or as a challenge to the constitutionality of the statute.
 
 [7]
 
 On both of these
 
 *538
 
 occasions, the trial courts did not reach the precise issue presented by the first and second special defenses in the present case. One published Superior Court case, however, has dealt with the issue raised by the defendant in the present case and has ruled that § 52-577d applies to nonperpetrators.
 
 See
 
 v.
 
 Bridgeport Roman Catholic Diocesan Corp.,
 
 Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV930300948S (September 16, 1993) (10 Conn. L. Rptr. 51).
 
 [8]
 

 The plaintiffs in
 
 See
 
 and
 
 Rosado
 
 v.
 
 Bridgeport Roman Catholic Diocesan Corp.,
 
 Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV930302072S (September 16, 1993) (10 Conn. L. Rptr. 51), brought personal injury claims against the perpetrators of the sexual assaults and against the Bridgeport Diocesan Corporation. The Bridgeport Diocesan Corporation moved for summary judgment on the ground that the claims against it were barred by § 52-584, the general negligence statute of limitations, which it claimed was the applicable limitations period. The court,
 
 S. Freedman, J.,
 
 denied the defendant’s motions. The court
 
 *539
 
 determined that the two statutes “ ‘should be harmoniously construed so the more specific statute controls.’ ”
 
 See Bridgeport Roman Catholic Diocesan Corp.,
 
 supra, 10 Conn. L. Rptr. 52, quoting
 
 McKinley
 
 v.
 
 Musshorn,
 
 185 Conn. 616, 624, 441 A.2d 600 (1981). Thus, the court held that § 52-577d, the specific statute, provided the applicable statute of limitations for the claims against the Bridgeport Diocesan Corporation.
 

 The facts of the present case are analogous to both
 
 Almonte
 
 and the
 
 Bridgeport Roman Catholic Diocesan Corp.
 
 cases. The facts include actions by individuals over which the defendants have supervision and control. These individuals allegedly perpetrated abuse of a sexual nature against a minor which, in the exercise of reasonable and proper care, the nonperpetrator defendants, it is maintained, could and should have prevented. The courts in those cases determined that the applicable statute of limitations was provided by § 52-577d, which specifically addresses actions for personal injuries caused by sexually abusive behavior.
 

 Accordingly, the motion to strike the first and second special defenses is granted.
 

 The defendant’s third special defense alleges that the “ [liability of the defendants is barred by General Statutes § 52-557n.” The plain language of § 52-557n, which is designed at once to both confer and to limit the liability of persons serving in political subdivisions, local boards and commissions includes an exception, however, “[ejxcept as otherwise provided by law,” which nullifies the use of this statute as a special defense. One of the statutes which falls under the exception is General Statutes § 52-557 entitled “Injury to children being transported to school,” which provides in pertinent part that “it shall be no defense that such transportation is in the line of governmental duty.” The statute explicitly eliminates the defense relied on by the defendants in the present action.
 

 
 *540
 
 The motion to strike the defendants’ third special defense, therefore, is granted as § 52-557 and not § 52-557n is the controlling statute.
 

 The defendants fourth special defense raises the issue of governmental immunity. A lawsuit against a town is not a suit against a sovereign. Unlike the state, towns do not benefit from sovereign immunity and may sue or be sued in any action.
 
 Murphy
 
 v.
 
 Ives,
 
 151 Conn. 259, 264, 196 A.2d 596 (1963). Municipalities and their employees have only a qualified immunity in the performance of a governmental duty.
 
 Burns
 
 v.
 
 Board of Education,
 
 228 Conn. 640, 645, 638 A.2d 1 (1994). In certain circumstances, municipalities do enjoy governmental immunity from liability for their tortious acts. Id.;
 
 Ryszkiewicz
 
 v.
 
 New Britain,
 
 193 Conn. 589, 593, 479 A.2d 793 (1984). In order to receive this qualified immunity, the actor must necessarily be engaged in a governmental duty. Section 52-557 prevents a town, school district, or municipality from claiming that transportation of schoolchildren is a governmental duty and thus exempting them from liability. For this reason, the fourth special defense is unavailable to the defendant.
 

 Additionally, governmental immunity may be abrogated by statute.
 
 Ryszkiewicz
 
 v.
 
 New Britain,
 
 supra, 193 Conn. 593. A second facet of § 52-557 is that it abrogates governmental immunity in the area of transportation of schoolchildren. For these two reasons, the plaintiffs’ motion to strike the defendants’ fourth special defense must be granted.
 

 The fifth special defense raises the issue of sovereign immunity. A few specific facts are necessary for a resolution of this issue. The minor plaintiff, Todd M., during the 1987-88 school year, was a special education student in the town’s school district. He was transported to school in accordance with the individualized education program developed for him as mandated by statute. See generally General Statutes § 10-76a et seq.
 

 
 *541
 
 In developing and maintaining a special education program, aboard of education acts under state mandate and, thus, acts as an agent of the state. See
 
 Cheshire
 
 v.
 
 McKenney,
 
 182 Conn. 253, 258, 438 A.2d 88 (1980). Administrative regulations adopted pursuant to § 10-76a specifically mandate that “[e]ach board of education shall provide, as a related service, safe and appropriate transportation as required to implement the individualized education program for each child requiring special education and related services . . . .’’Regs., Conn. State Agencies § 10-76d-19.
 

 The transportation of Todd M. to the elementary school involved duties and activities for which the board was responsible as an agent of the state. The doctrine of sovereign immunity, it is maintained, should apply in this instance.
 

 This question was addressed by the court in
 
 Crandall
 
 v.
 
 Board of Education,
 
 Superior Court, judicial district of New London, Docket No. 102935 (November 26, 1993) (9 C.S.C.R. 34). In that case, the court,
 
 Hendel, J.,
 
 granted the defendants’ motion to strike the plaintiffs claims of negligence against the board arising from alleged verbal and physical abuse by aides on the special education bus. The court reviewed the distinction between a local board of education as an agent of the state and as an agent of a municipality. Id. When fulfilling statutory duties imposed upon them pursuant to the mandate of article eighth, § 1, of the state constitution, boards of education act as agents of the state and are protected by the doctrine of sovereign immunity. Id., 35, citing
 
 Cheshire
 
 v.
 
 McKenney,
 
 supra, 182 Conn. 258. When acting on behalf of a town in maintaining control over the town’s public schools, however, a local board of education is an agent of the town and is not afforded sovereign immunity.
 
 Crandall
 
 v.
 
 Board of Education,
 
 supra, 35. “A local board of education can be an agent of the state for some purposes and an agent of the
 
 *542
 
 municipality for others. . . . Thus, a local board of education potentially enjoys immunity under two different theories of immunity for acts carried out within its governmental capacity, sovereign immunity and governmental immunity. . . . There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eight, § 1. ... They are also agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality’s limits. . . . When acting on behalf of the town, local boards of education are not shielded by sovereign immunity. See, e.g.,
 
 Kosloff v. Fairfield City Council of Boy Scouts of America,
 
 6 Conn. L. Rptr. 88 (February 25,1992,
 
 Spear,
 
 J.) (sovereign immunity does not bar a claim against school board by minor plaintiff who was injured when several older and larger children fell on him during a roller-skating event sponsored by a Boy Scouts Council and held at a school, since board was not acting as a state agency in maintaining control over the school with respect to the conduct of the skating event). But see
 
 Arvoy
 
 v.
 
 City of Stamford,
 
 2 Conn. L. Rptr. 317 (August 21, 1990,
 
 Lewis,
 
 J.) (sovereign immunity bars claim against school board by plaintiff student who was assaulted by another student on the grounds of a high school, since board of education while performing its educational functions is a state agent).” (Citations omitted; internal quotation marks omitted.)
 
 Crandall
 
 v.
 
 Board of Education,
 
 supra, 35. Accordingly, the plaintiffs claims in
 
 Crandall
 
 were stricken.
 

 The cases cited by the plaintiffs in opposition to this principle, are inapposite. In
 
 Belanger
 
 v.
 
 Glastonbury,
 
 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 90380529 (April 22, 1991) (3
 
 *543
 
 Conn. L. Rptr. 478), the plaintiff alleged that the school bus that had struck a minor student was owned by the town of Glastonbury. The court reasoned that since maintenance of school property is not included within the educational activities of the state, the board was acting as an agent of the municipality and the court rejected the sovereign immunity argument in that instance. In
 
 Nunes
 
 v.
 
 Blake Bus Service, Inc.,
 
 Superior Court, judicial district of Milford, Docket No. CV90030469S (January 4, 1991) (3 Conn. L. Rptr. 149), the court relied upon General Statutes § 10-220, which is not the controlling statute in this matter.
 

 Since the provision of special education services, which specifically include transportation as a part of an individualized education plan, is carried out by a board of education pursuant to a specific educational mandate of the state, the doctrine of sovereign immunity applies and bars the plaintiffs’ claims of negligence in the present case. The plaintiffs’ motion to strike the defendants’ fifth special defense is denied.
 

 The defendants’ sixth special defense raises the issue of laches in the following manner: “Plaintiffs’ claims are barred by the doctrine of laches.” The Connecticut courts have held that a special defense of laches must be stricken if it fails to plead facts sufficient to support the legal conclusion that the claim is barred by laches.
 
 Shawmut, N.A.
 
 v.
 
 Concord Steel Corp. of Connecticut,
 
 Superior Court, judicial district of Middlesex, Docket No. 67176 (June 2,1993);
 
 Hydro-Kem Services
 
 v.
 
 United Illuminating Co.,
 
 Superior Court, judicial district of New Haven, Docket No. CV910324789S (October 30, 1992);
 
 D'Addario
 
 v.
 
 Bergman,
 
 Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV900266582S (January 17, 1992). In
 
 Shawmut, N.A.,
 
 the court,
 
 J. Walsh, J.,
 
 struck the defendant’s special defense of laches for failure to plead sufficient facts to show that the defendant was indeed prejudiced by the
 
 *544
 
 plaintiffs delay in bringing the action. Id. Similarly, in
 
 Hydro-Kem Services,
 
 the court,
 
 Celotto, J.,
 
 granted the plaintiffs motion to strike the defendant’s special defense when it held that the laches defense contained no more than conclusions and was demurrable. Id., citing
 
 Warner
 
 v.
 
 Liimatainen,
 
 153 Conn. 163, 215 A.2d 406 (1965).
 

 The defendants’ sixth special defense merely states that the “[plaintiffs’ claims are barred by the doctrine of laches.” As such, this defense fails to allege any facts to support the contention that the plaintiffs’ delay is prejudicial to the defendants.
 

 In addition, the Supreme Court has held that the equitable defense of laches is barred in an action at law.
 
 A. Sangivanni & Sons
 
 v.
 
 F. M. Floryan & Co.,
 
 158 Conn. 467, 474-75, 262 A.2d 159 (1969);
 
 Weil v. Poulsen,
 
 121 Conn. 281, 289, 184 A. 580 (1936). In
 
 A. Sangivanni & Sons,
 
 the court held that “laches is purely an equitable defense and is not imputed to one who has brought an action at law within the statutory time period.”
 
 A. Sangivanni & Sons
 
 v.
 
 F. M. Floryan & Co.,
 
 supra, 474. Similarly, in
 
 Weil
 
 v.
 
 Poulsen,
 
 supra, 286, the court stated that the equitable defense of laches cannot be asserted in an action at law seeking damages. The defendants’ sixth special defense is insufficiently and inappropriately pleaded; the motion to strike is granted.
 

 The defendants’ seventh special defense states that “[a]ny alleged injuries sustained by plaintiffs were the result of the intentional, intervening tortious conduct of the other students on [the] bus . . . which conduct was a superseding cause of plaintiffs’ injuries.”
 

 Section 315 of the Restatement (Second) of Torts provides that there is generally no duty to control the conduct of a third person to prevent harm to others unless there is a special relationship giving the injured
 
 *545
 
 party a right to such protection. 2 Restatement (Second), Torts § 315 (1965). The types of relationships that impose a duty because of the relation of the actor to a third person include parents, employers, and landowners. Id., §§ 316 through 319. The types of relationships that impose a duty based on the relation of the actor to the victim include that of innkeeper, common carrier, police and the like. Id., § 314. Where one of these special relationships exists, there is a duty to so control the intentional conduct of third persons.
 
 Kargul
 
 v.
 
 Sandpiper Dunes Ltd. Partnership,
 
 Superior Court, judicial district of New London, Docket No. 505600 (January 28, 1991) (6 C.S.C.R. 243, 243-46).
 

 In the present case, there are elements of both types of “special relationship.” Here, the defendants had a duty imposed by law to protect Todd from harm and to prevent the intentional harm to the schoolchildren in their care. Members and employees of boards of education stand as surrogate parents to their pupils. See
 
 Sansone
 
 v.
 
 Bechtel,
 
 180 Conn. 96, 98, 429 A.2d 820 (1980);
 
 Andreozzi
 
 v.
 
 Rubano,
 
 145 Conn. 280, 282, 141 A.2d 639 (1958). Part of this special relationship includes the duty to maintain order and discipline.
 
 Sansone
 
 v.
 
 Bechtel,
 
 supra, 98. There are, therefore, two bases for finding that the defendants’ special defense is improper. First, the defendants stood in the shoes of the parents of the children on the school bus and thus, had a duty to protect them from the intentional acts of others, including other schoolchildren. Second, the duty of the defendants also extended to an obligation to maintain discipline and order. Having failed in that regard, the defendants may not now claim that their failure to prevent the very conduct they had a duty to prevent relieves them of liability. The motion to strike the seventh special defense is, therefore, granted.
 

 [1]
 

 General Statutes § 52-584 provides: “Limitation of action for injury to person or property. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed.”
 

 [2]
 

 General Statutes § 52-577 provides: “Action founded upon a tort. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.”
 

 [3]
 

 General Statutes § 52-557n provides: “Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions, (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (G) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of Ihe slate shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.
 

 “(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of,
 
 *532
 
 or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or malting an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision.
 

 “(c) Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury occurring on or after October 1,1992, resulting from any act, error or omission made in the exercise of such person’s policy or decision-making responsibilities on such board, commission, committee or agency if such person was acting in good faith, and within the scope of such person’s official functions and duties, and was not acting in violation of any state, municipal or professional code of ethics regulating the conduct of such person, or in violation of subsection (a) of section 9-369b or subsection (b) or (c) of section l-21i. The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, wilful or wanton misconduct of such person.”
 

 [4]
 

 See Alaska Stat. § 9.10.140 (1995); Cal. Civ. Proc. Code § 340.1 (Deering 1994); Ga. Code Ann. § 9-3-33.1 (Sup. 1995); La. Rev. Stat. Ann. § 9:2800.9 (West Sup. 1995); Mo. Rev. Stat. § 537.046 (1994); Mont. Code Ann. § 27-2-216 (1995); N.J. Rev. Stat. § 2A:61B-1 (West 1994); Okla. Stat. tit. 12, § 95 (1991); R.I. Gen. Laws § 9-1-51 (Sup. 1995); S.D. Codified Laws Ann. § 26-10-25 (1992); Utah Code Ann. § 78-12-25.1 (Sup. 1992); Vt. Stat. Ann. tit. 12, § 522 (1989); Wash. Rev. Code § 4.16:340 (1987).
 

 [5]
 

 Representative Tulisano stated that the statute was “designed to give [victims] some sort of self-help.” 29 H.R. Proc., Pt. 17, 1986 Sess., p. 6336. “[I]t provides an opportunity for those who have been victimized to step
 
 forward, to try to seek
 
 a chance
 
 to win
 
 something back, which although they never could, it at least provides them with the opportunity to speak up, to talk about it, and to make sure that their voice and their concerns are heard.” Id., p. 6353, remarks of Representative Jonathan W. Pelto.
 

 [6]
 

 As part of the training regimen, students wishing to become psychoanalysts must themselves undergo analysis. The facts of the case revealed that the perpetrator in fact told his analyst that he was a pedophile.
 

 [7]
 

 In
 
 Little v. Boo th,
 
 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. OV920514952S (October 28,1993) (10 Conn. L. Rptr. 290), the defendant board of education argued that the complaint should have been dismissed because the seventeen year statute of limitations period of § 52-577d does not apply to actions based on negligent conduct, which permit the abuse to occur. The court,
 
 Dunn, J.,
 
 held that objections to the slat ute of limitations period of § 52-577d must be brought by special defense. Id., 292. The court based its holding strictly on procedural grounds when it held that pursuant to Practice Book 8 164, objections to the statute of
 
 *538
 
 limitations provision of § 52-577d can only be raised by special defense. Id., 292-93, citing
 
 Forbes
 
 v.
 
 Ballaro,
 
 31 Conn. App. 235,239, 624 A.2d 389 (1993). Thus, the court dismissed the defendant’s argument without reaching the merits of the defendant’s claim.
 

 Another case in which the court reviewed § 52-577d is
 
 Giordano
 
 v.
 
 Giordano,
 
 Superior Court, judicial district of New Haven, Docket No. CV930344260 (June 14, 1993) (9 Conn. L. Rptr. 257). In
 
 Giordano,
 
 the court,
 
 Hodgson, J.,
 
 was asked to review the constitutionality of § 52-577d. The defendant argued that § 52-577d is unconstitutional because the passage of time had deprived him of the ability to present some witnesses. Id. The court, however, dismissed the defendant’s argument because the defendant had “not demonstrated a likelihood that he will prevail on the merits of his claim that § 52-577d C.G.S., as amended, is, as a matter of law, unconstitutional.” Id.
 

 [8]
 

 The court also decided the companion case of
 
 Rosado
 
 v.
 
 Bridgeport Roman Catholic Diocesan Corp.,
 
 Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV930302072S (September 16, 1993) (10 Conn. L. Rptr. 51), in the same opinion.