[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiffs are the owners of a parcel of commercial property located at and known as 149 Welchs Point Road in Milford. On March 1, 1989, they and the defendant entered into a written lease for a period of three years, commencing March 1, 1989, with the defendant planning to operate a hair salon on the premises. The rent was set at $400 per month for the first year CT Page 11124 and an additional $100 for "common charges." For the second year, the basic rent increased to $440, and for the final year, the rent rose to $480. The common charge remained at $100 per month through the lease term.
The defendant tenant failed to pay the $40 rent increments for the second and third years, and in this action the landlords seek to recover $480 due for the second year and $960 they claim is due for the third year.
The plaintiffs also claim the original lease was extended for an additional three year term "under all the same terms and conditions," to run from March 1, 1992 to February 28, 1995. There is no written agreement or memorandum setting forth this lease renewal, but the tenant occupied the premises through that period and remained occupancy from March 1, 1995 to December 31, 1996. For the alleged three year renewal period and the hold over period, the defendant paid $500 per month, except for the months of November and December 1996.
The plaintiffs seek to recover for these months plus an additional $2,880, computed at $80 for 36 months, and still an additional $80 per month for the period from March 1, 1995 to December 31, 1996, representing 22 months at $80 per month.
There is no dispute over the amounts paid by the defendant, but he denies he indebted to the plaintiffs for any increments over the original $500 total. The plaintiffs also claim the defendant is liable for substantial damage to the premises, all allegedly occurring during his occupancy. The plaintiffs also argue that the defendant's failure to remove all of his property from the premises made it impossible for them to rent the premises.
The defendant has pleaded laches, the statute of limitations, denied the lease extension was valid, and argues that the tendering by the defendant and the acceptance by the plaintiffs of the $500 per month infers an agreement to rent the premises for that amount.
 I
As to the defense of laches, the court finds that defense is not available under these facts. Though it involved an arbitration dispute, this issue was addressed by our Supreme CT Page 11125 Court on A. Sangivanni Sons v. F.M. Floryan Co.,158 Conn. 467 (1969), where at page 475 the court noted:
 "This action to compel arbitration is brought pursuant to General Statutes § 52-410, and we have said under certain circumstances that laches is not available as a defense to an action at law. Weil v. Poulsen, 121 Conn. 281, 289, 184 A. 580. This was held to have been so since an action in a court of law is governed by the Statute of Limitations and ordinarily the defense may not be invoked in such a situation. Cross v. Allen, 141 U.S. 528, 537, 12 S.Ct. 67, 35 L.Ed. 843; 27 Am.Jur.2d, Equity, § 154. The defendants had an adequate procedural remedy available to them to ensure a prompt trial or early disposition of the case."
Though the defendant alleges he has no adequate remedy at law to defend against a stale claim, he does have the statute of limitations which will be considered next.
 II
The plaintiffs concede that their cause of action did not accrue until March 1, 1990 (the first date they claim the increased rent was due), and that the defendant was not served until February 27, 1997. They state that "the vast majority of the Plaintiffs (sic) claims for back rent fall within the statute of limitations." This appears to admit that a portion was outside
the statute, thus the sums claimed for the year between March 1, 1990 and February 28, 1991 are outlawed and the plaintiffs are precluded from recovering as to those months.
The plaintiffs claim the defendant promised to make the disputed payments when he was able thereby tolling the statute of limitations. The defendant denies this claim and in light of the conflicting versions, the court does not find the defendant made said statements.
 III
There is no dispute over the fact that when the original lease ran out, the defendant remained in occupancy. He continued to pay the same amount he had been paying. However, there was no compliance with requirements of the lease that the tenant notify the landlord in writing, via registered mail, of his intent to renew not less than 90 days prior to the expiration of the final CT Page 11126 year of the original terms. Thus, the renewal did not occur in this fashion.
As for the plaintiffs' claims that a renewal for another three years was effected via oral agreement, the plaintiffs neglected to address the statute of frauds. As a lease is an interest in real estate and this "agreement" was to be performed for a period in excess of a year, the occupancy became a month to month tenancy when the original term expired. City Coal Co. v.Marcus, 95 Conn. 454 (1920).
In summary then, we have an original term of three years followed by a month to month tenancy, terminating upon the defendant's removal. The defendant does not explain how the statute of limitations applies to the claimed under-payments after February 28, 1991.
 IV
Where, as in this case, the parties each offer a different explanation of their dealings, it is necessary to examine the total circumstances to determine what the parties actually intended.
It is noted at the onset that the plaintiff Jasper Jaser was the party who conducted this rental activity, prepared the original written lease and dealt with the defendant. Mr. Jaser is a business man with years of experience in banking and commerce.
The court finds it inconceivable that he proceeded as he did, month after month, year after year, and took not one step to confirm what he now says was his intent and the agreement of the parties.
Thus, there is no corroborating evidence in the form of a letter of confirmation, no letter demanding payment, no copy of a receipt reciting a balance, no demand from an attorney, no summary process action, and no suit to collect the balance — until the present action in February of 1997. And, of particular significance is the acceptance of all of the defendant's payments — apparently without protest, though Mr. Jaser claims to have had conversations with the defendant.
Because of the length of time that elapsed, the number of payments accepted, and the total absence of corroboration, the CT Page 11127 court concludes that the plaintiffs' claim that the defendant owed him for all these years is inconsistent with the actions of the parties. Rather, the entire pattern is more consistent with the version offered by the defendant, that the rent remained the same throughout because that was all he could afford.
 V
The plaintiffs' inattention to detail and corroboration of activities apply also to his claim now that he is owed substantial sums for damage to the property.
Again, there is no corroboration of the defendant being advised of a damage claim. There is also a discrepancy — unresolved at the trial — as to who occupied certain areas and what role another tenant may have played in creating a situation the defendant is charged with.
Much of the damage claim is derived from an estimate for putting certain systems at "code compliance." The defendant claims he hired artisans who performed in accordance with the code. Eluding the court and unaddressed by the plaintiffs is the question of how much, if any of this "code compliance" is the defendant's responsibility. First, this work was done with the plaintiffs' permission to be used by the defendant; second, of what work do the plaintiffs claim they should benefit, and how is all this affected by the code changes which were adopted after the defendant had the work done?
Finally, the plaintiffs claim that they could not rent the premises because the defendant left so much property behind. The defendant denies this and pointed out in photos a smaller quantity of items he says he was not permitted to remove. The plaintiffs could have used legal means if he were in doubt that the property was abandoned or he could have demanded their removal. Apparently, he did neither.
CONCLUSION
It is the conclusion of the court that the plaintiffs have not satisfied their burden of proof as to the increased rent payments, property damage, and inability to rent.
The defendant did concede that he was unable to pay the rent due for November and December of 1996. CT Page 11128
Judgment may enter for the plaintiffs in the amount of $1,000 plus taxable costs.
________________________________ Anthony V. DeMayo Judge Trial Referee